BOWLES, Price Adm'r, v. HEINEL MOTORS, Inc., et al.

No. 3650.

District Court, E. D. Pennsylvania.

Oct. 18, 1944.

Judgment Affirmed June 13, 1945.

Harry W. Steinbrook, of Philadelphia, Pa., for plaintiff.

John E. Sheridan and Samuel I. Sacks, both of Philadelphia, Pa., for defendants.

KIRKPATRICK, District Judge.

This is an action by the Price Administrator of the Office of Price Administration for injunctive relief and for damages treble the amount of overcharges above ceiling prices on sales made by the defendants. The plaintiff seeks injunctive relief against the defendants under Section 205(a) and (c) of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 925 (a, c), for thirteen violations of the following types:

(a) Sales above ceilings prescribed by Maximum Price Regulations No. 341 and Revised Maximum Price Regulation No. 341.

(b) Failure to "tag" vehicle for the benefit of purchasers under Maximum Price Regulation No. 341 and Revised Maximum Price Regulation No. 341.

(c) Failure to give invoices under Maximum Price Regulation No. 341.

The plaintiff further seeks treble damages under Section 205(e) of the Emergency Price Control Act for overcharges by the defendants above ceilings.

The case resolves itself into five main issues.

(a) Whether or not the vehicles in question were sold under a guarantee as prescribed by the Regulation.

(b) The method of computing the "age" of the vehicles in question.

(c) Whether the defendants had any right to use the percentages provided by the Revised Maximum Price Regulation No. 341 before the effective date of the Regulation.

(d) Whether the Administrator had any right to bring this action under Section 205(e) of the Emergency Price Control Act.

(e) The amount of the judgment.

■ (a) Maximum Price Regulation No. 341, Section 1360.506(c), 8 Fed.Reg. 3973, provides in part, "No vehicle shall be sold * * * unless the dealer shall furnish the purchaser with a signed guarantee * * *." Revised Maximum Price Regulation No. 341, Section 5, 8 Fed.Reg. 11177, states, "Before the percentage applicable to a 'warranted' vehicle can be used * * * the warranty stated in that section (Section 8) must be furnished to the purchaser." Section 8 sets forth a form.

The Administrator accepts three of the transactions as meeting the warranty requirements of the Regulations, but denies that the other nine do so. The record does not show what facts induced the government to accept three transactions as warranted.

However, the record is clear as to one thing, and that is that no written guarantees of any kind were furnished to the purchasers at the time of the sales.

■ (b) Section 1360.504(b) 1, outlines the method of determining the age of the vehicle. Three methods are provided: (1) The date of delivery of the vehicle when new to a person who purchased it if such date of delivery can be supported by original invoice or certified copies thereof. (2) If the above is not available, then the first day of January of the year by which the model and year of manufacture of chassis of vehicle as designated by manufacturer. (3) If neither of the above are available then the age is to be considered as more than 72 months. The defendants presented a telegram in evidence to show the date of actual purchase of these trucks by Lever Brothers, from whom the defendants purchased the trucks.

The regulation is clear in its terms. It requires either the bill of sale or invoice or certified copies thereof. The telegram from Lever Brothers cannot be considered as an invoice or a copy of one. The age of

the vehicles in question should therefore be determined from the first day of January of the year by which the model and year of manufacture of the chassis of the vehicle is designated by its manufacturer or if that information cannot be ascertained, then a period of more than 72 months. This is the method adopted by the Administrator· and found in Exhibits A and B attached to his requests.

Even if the August 1943 revision of Maximum Price Regulation No. 341 were controlling, the telegram would still not meet the requirements. The alternatives offered by the revised regulation are the original bill of sale or original invoice, or the motor or serial number.

■ (c) There really is no genuine issue as to which regulation shall apply. Maximum Price Regulation No. 341 was issued March 31, 1943, and made effective April 26, 1943. A revised Maximum Price Regulation increasing the ceiling price was issued August 10, 1943 and became effective August 16, 1943. All but two of the transactions involved in this suit took place after July 9 and before August 16, 1943. (The two transactions after August 16 took place on August 20 and August 31, 1943.) The defendants offer no explanation for using the revised regulation before its effective date other than "that the prices as fixed as of April 1943 were unreasonable, and that application was made for changes in these prices."

In cross-examination E. W. Heinel testified that he knew the April code existed and admitted that he did not use the method outlined by the regulation to establish his prices on any of the thirteen transactions.

■ (d) Under the Act the Administrator is empowered to bring the action only if the buyer is not entitled to do so. As to the buyer's right to sue the Act says, "The person who buys such commodity for use or consumption other than in the course of trade or business may * * * bring an action against the seller." Thus, the Administrator's right arises only where the purchase is for consumption in the course of trade or business. The buyers of these trucks were not dealers and did not buy them primarily for resale. They were all engaged in business and bought the trucks for use in their business.

The defendants contend that it was the purpose of the Act to permit ultimate consumers generally to bring suit to recover overcharges and that it was intended by the language quoted above that the only class of buyers disentitled should be dealers in the commodity in question who buy for resale. In view of the fact that such buyers presumably expect to. resell, at a profit, it might well be assumed that they are in a higher degree particeps criminis than the ordinary purchaser. The construction would be an entirely reasonable one and that it was quite possibly the intention is indicated by the Senate Committee report on the bill. It is also a view which one district court at least has adopted.

The trouble is that it cannot be accepted without distorting some of the words of the Act and ignoring others. The Act does not mention purchases for resale. It is awkward enough to fit the transactions of a purchaser of any article who buys it and resells it into the definition, "use in the course of business" but by no possible definition can his transactions constitute "consumption." The use of that word indicates beyond question that a much larger class of purchasers than merely those who buy for resale are intended to be precluded from suing to recover overcharges. The only thing it can mean is purchasers like those in the present case who are conducting a business and intend to use, or use up, the commodities in the furtherance of their business. This results in practically limiting the class of buyers who can sue in their own right to purchasers of household articles, food, dress, luxuries, and the like.

I am not particularly impressed with the arguments based on considerations of policy which have been advanced from time to time to sustain this view and, as I said before, I have some doubt that that is what was intended, but the language which was chosen and adopted makes it beyond question that it is the meaning which the court must give to the provision.

■ (e) The final question is as to the amount of the judgment. The suit being by a government agency, any judgment is in the nature of a penalty. While this defendant has no real defense to the charges against it, it has a number of excuses which have a certain amount of·merit and which, if I were free to do so, would induce me to enter judgment for a sum considerably less than the amount of the over-

762

charge. Reluctantly, I have reached the conclusion that I have no choice in the matter and that the judgment must not be less than the overcharge.

If the amendment to Section 205(e) of the Emergency Price Control Act of 1942, Section 108(b), was intended to clarify the Act in respect of the limits of the court's discretion, it was certainly a dismal failure. This is the provision: "In such action, the seller shall be liable for reasonable attorney's fees and costs as determined by the court, plus whichever of the following sums is the greater: (1) Such amount not more than three times the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may determine, or (2) an amount not less than $25 nor more than $50, as the court in its discretion may determine: Provided, however, That such amount shall be the amount of the overcharge or overcharges or $25, whichever is greater, if the defendant proves that the violation of the regulation, order, or price schedule in question was neither wilfull nor the result of failure to take practicable precautions against the occurrence of the violation." The literal meaning of this is that in the ordinary case of a wilful violation the court has discretion to enter any amount not more than three times the overcharge or overcharges and not less than $25, but that, if the violation was not wilful, then the court must enter its judgment for at least the amount of the overcharges if they are greater than $25. Thus, in the present case, finding as I do that the violations were wilful, I must under the literal reading of the Act enter judgment for as little as $25, but, if I had found them to be not wilful I would have been compelled to enter judgment for at least the amount of the overcharges, or $2,125.60. Of course, that cannot be what the Act means and the provision must be read as the Administrator contends in order to avoid such a ridiculous result. The first alternative, "Such amount not more than three times the amount of the overcharge, or the overcharges * * * as the court in its discretion may determine," must contain the implicit qualification that the lower limit of the court's discretion is the amount of the overcharge itself. This being the only possible construction of the provision which comports with common sense, I adopt it and the judgment will be entered accordingly.