**RECONSTRUCTION FINANCE CORP. v. FOUST DISTILLING CO.**

No. 3008.

United States District Court, M. D. Pennsylvania.

Feb. 12, 1952.

Tex.Civ.App., 116 S.W.2d 1144, affirmed 135 Tex. 84, 138 S.W.2d 531 and cases therein cited.

James G. McDonough, Scranton, Pa., David H. Frantz, Arthur J. Sullivan, Philadelphia, Pa., for plaintiff.

Eugene Nogi (of Nogi, O'Malley & Harris), Scranton, Pa., for defendant.

MURPHY, District Judge.

Plaintiff (RFC) as transferee[1] of Defense Supplies Corporation (DSC) seeks from defendant distiller, a Pennsylvania corporation, simple damages for breach of contract; treble damages for violation of maximum price regulations and refund orders, reasonable attorney's fees, interest and costs, by virtue of a violation of § 205(e) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A. Appendix, § 925(e).

Upon denial of its motion to dismiss plaintiff's complaint[2] defendant filed an answer and counterclaim. Plaintiff moves for summary judgment on the complaint, to dismiss the counterclaim or alternatively for summary judgment thereon.[3] The record consists of the complaint and accompanying exhibits, including the contract, defendant's answer and counterclaim, plaintiff's supporting affidavits and defendant's counter affidavit.

Affidavits may be considered on motions for summary judgment to ascertain whether an issue of fact is presented but not as a basis for deciding a fact issue. Frederick Hart & Co., Inc., v. Recordgraph Corp., 3 Cir., 1948, 169 F.2d 580. It is well settled that summary judgment may be entered for either party if the pleadings and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Toebelman v. Missouri-Kansas Pipe Line Co., 3 Cir., 1942, 130 F.2d 1016 at page 1018, Love v. United States Rubber Co., D.C.M.D.Pa., 92 F.Supp. 174 at pages 176, 177.

Is there a genuine issue as to any material fact? Is plaintiff entitled to judgment as a matter of law?

The controversy revolves around a dispute between the parties as to (a) the maximum price to be paid by DSC to defendant for alcohol sold and delivered under a written contract; (b) was defendant's refusal to make refunds as directed in OPA price orders wilful or the result of failure to take practicable precautions against occurrence of the violations?

During the recent World War, by written contract[4] defendant agreed to sell and

---

1. See Reconstruction Finance Corporation v. Foust Distilling Co., D.C.M.D.Pa., 87 F.Supp. 632, footnote 2.

2. See R.F.C. v. Foust Distilling Co., supra.

3. Fed.Rules Civ.Proc., 28 U.S.C.A. Rule 56(a); Id. Rule 12(b); Id. Rule 56(b), respectively.

4. Dated January 1, 1944; amended, supplemented and revised July 1, 1944; terminated August 31, 1945.

The contract provided it was to be construed under New York laws. While ordinarily the intention of the party controls, (Gill v. Benjamin Franklin Realty

& Holding Co., 3 Cir., 43 F.2d 337, 338), here however we are concerned with procedure and with the interpretation of a federal statute, federal regulations and price orders. See Black Diamond Steamship Corp. v. Stewart & Sons Ltd., 336 U.S. 386 at page 396, 69 S.Ct. 622, 627, 93 L.Ed. 754, "* * * The forum is not governed by foreign rules of procedure." Pritchard v. Norton, 106 U.S. 124, 1 S.Ct. 102, 27 L.Ed. 104. Existing laws are incorporated in the contract. Wood v. Lovett, 313 U.S. 362, 61 S.Ct. 983, 85 L.Ed. 1404; Home Building & Loan Ass'n, v. Blaisdell, 290 U.S. 398, 429, 430, 54 S.Ct. 231, 78 L.Ed. 413.

DSC agreed to buy up to defendant's maximum production of alcohol as allocated to DSC by the War Production Board (WPB), the purchase price to be the maximum price for producer's alcohol as determined in accordance with appropriate regulations by the Office of Price Administration (OPA). The contract provided that, pending determination of such maximum price by OPA, DSC would make pro forma payments[5] to defendant for alcohol sold and delivered. If however price adjustments were later made which required a refund to DSC by defendant the latter agreed to make such payments promptly.

As to certain quarterly periods,[6] the OPA thereafter fixed maximum prices for defendant's alcohol at a figure lower than that paid to the defendant, and ordered defendant to refund the excess within fifteen days. In each instance defendant refused to comply.

MPR No. 28[7] provided that prices were to be based upon defendant's costs, plus a four cent per gallon profit. Although it followed the prescribed formula, the OPA challenged and disallowed certain items of cost as furnished by the defendant. In each price order, when this occurred, defendant was notified as to the items disallowed and of its right to file a protest. The defendant did not file such protest or invoke the methods provided by law to seek revision upward, i. e., pursue the statutory administrative procedure of appeal with the right of judicial review by the Emergency Court of Appeals within the time allotted.

Having failed to avail itself of the proper administrative remedy and judicial review, defendant herein challenges plaintiff's right to enforce the refund orders assigning reasons[8] the gist and purport of which are attacks upon the validity, effectiveness and enforcibility of price or-

5. "In an amount determined from time to time by the DSC to approximate the estimated final price; and preliminary adjustments in the pro forma payments may be made on the basis of the producer's reports of costs to the OPA, and on the basis of OPA's audits of the producer's cost."

6. July 13, 1945 Price Order L–54

| | | | | | |
|---|---|---|---|---|---|
| 2nd quarter 1944 | @ | 1.0186 | refund | 17422.77 |
| 3rd " " " | | 1.0570 | " | 12703.51 |
| 4th " " " | | .9901 | " | 17534.02 |

April 18, 1947 Revised Order L–171

| | | | | | |
|---|---|---|---|---|---|
| 1st quarter 1945 | @ | 1.0431 | refund | 9069.35 |
| 2nd " " " | | 1.0550 | " | 11870.71 |

January 8, 1947 Price Order L–207

| | | | | |
|---|---|---|---|---|
| 3rd quarter 1945 | @ | 1.0760 | refund | 1180.41 |

69840.77

7. During the period in question Maximum Price Regulation (herein MPR) No. 28 as amended (originally issued Sept. 15, 1941, 6 F.R. 4761; Revised MPR No. 28, February 22, 1943, 8 F.R. 2339,) established the method by which distillers were to determine such maximum prices and required that such prices be reported to the OPA with a statement of production costs upon which they were based.

§ 1412.263(h) (3) thereof provided "Such maximum prices shall be subject to disapproval in writing at any time by the Office of Price Administration, and if the maximum price reported by a producer pursuant to this paragraph is revised downward by the Office of Price Administration, and if any payment has been made at the reported price, the producer may be required to refund the excess." As to the amendments thereof:

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1. | 8 F.R. 4256 | 6. | 9 F.R. 4198 | 11. | 10 F.R. 2581 |
| 2. | " 4852 | 7. | " 4883 | 12. | " 6802 |
| 3. | " 9016 | 8. | " 12271 | 13. | " 12960 |
| 4. | " 12879 | 9. | " 12412 | 14. | " 14448 |
| 5. | " 2668 | 10. | " 13209 | 15. | 11 " —— |

8. They purport to give the Price Administrator power (1) to issue orders not of "general applicability and effect"; (2) to redetermine retroactively maximum

ders and refunds ordered therein; further that such OPA regulations and orders are not applicable to the contract in question notwithstanding the express provisions of the contract to the contrary.

■ No question can be here raised as to the validity of the relevant regulations and the refund orders on the ground of retroactivity or otherwise. Those are matters exclusively within the jurisdiction of the Emergency Court of Appeals. 50 U.S.C.A.Appendix, §§ 923, 924; Woods v. Stone, 333 U.S. 472 at pages 474 and 482, 68 S.Ct. 624, 92 L.Ed. 815; Lockerty v. Phillips, 319 U.S. 182 at pages 185, 188, 63 S.Ct. 1019, 87 L.Ed. 1339; Woods v. Hills, 334 U.S. 210, 68 S.Ct. 992, 92 L.Ed. 1322; Yakus v. United States, 321 U.S. 414 at pages 431, 434, 435, 64 S.Ct. 660, 88 L.Ed. 834; Bowles v. Willingham, 321 U.S. 503 at page 512, et seq., 64 S.Ct. 641, 88 L.Ed. 692, and see Porter v. Senderowitz, 3 Cir., 158 F.2d 435 at pages 438, 440, certiorari denied 330 U.S. 848, 67 S.Ct. 1091, 91 L.Ed. 603.

■ While the Act denies a defendant in an enforcement proceeding the right to challenge the validity of the regulation, it does not deny him the right to attack the Act itself on constitutional grounds. Yakus v. United States, 321 U.S. 414, 430, 64 S.Ct. 660, 88 L.Ed. 834. This right may not however be utilized as a means of indirectly attacking the regulations themselves instead of the statute. Case v. Bowles, 327 U.S. 92 at page 98, 66 S.Ct. 438, 90 L.Ed. 552. As to the constitutionality of the Act itself, see cases cited in the previous paragraph and see Bowles v. American Brewery, Inc., 4 Cir., 146 F.2d 842 at page 844; cf. Taylor v. United States, 9 Cir., 142 F.2d 808 at page 817, certiorari denied 323 U.S. 723, 65 S.Ct. 56, 89 L.Ed. 581; Taylor v. Porter, Em.App., 156 F.2d 805 at page 809, certiorari denied 329 U.S. 792, 67 S.Ct. 203, 91 L.Ed. 671;

Speten v. Bowles, 8 Cir., 146 F.2d 602, certiorari denied 324 U.S. 877, 65 S.Ct. 1023, 89 L.Ed. 1429; Shyman v. Fleming, 9 Cir., 163 F.2d 461 at page 463.

■■ Refusal to make a refund directed by the OPA constitutes a violation of the contract and of the Act itself. Under § 205(e) defendant is liable for treble damages unless it proves that the violation was "neither wilfull nor the result of failure to take practicable precautions against the occurrence of the violation." In this regard wilful means intentional, knowing, voluntary or deliberate, as distinguished from accidental, involuntary or unintentional. Haber v. Garthly, D.C., 67 F.Supp. 774 at page 776, affirmed 3 Cir., 165 F.2d 211; Connor v. Wheeler, D.C.W.D.Pa., 77 F.Supp. 875 at page 879.

■ We find nowhere in defendant's pleadings any attempt to assert a defense which would negative the claim for treble damages under § 205(e). Such a defense must be pleaded and proved by the defendant. See Bowles v. Krodel, 7 Cir., 149 F.2d 398 at pages 399, 400; Bowles v. Glick Bros. Lumber Co., 9 Cir., 146 F.2d 566 at pages 571, 572. We assume that defendant has asserted its strongest position which is its reliance upon its asserted right that the costs stated by it were justified notwithstanding their disallowance by the OPA.

In its price notice sent to DSC January 3, 1944, in connection with the contract in question defendant advised that prices were subject to upward and downward adjustment in accordance with OPA MPR No. 28, § 1412.263(h). See Yakus v. United States, supra, 321 U.S. at page 435, 64 S.Ct. 660.

■ Defendant's reliance upon an unsupportable proposition of law does not under the circumstances make its refusal to refund other than wilful. Defendant in failing to take advantage of the right to

prices in accordance with reports of actual cost; (3) Do., beyond a reasonable time; (4) Do., otherwise than in accordance with established accounting methods; (5) Do., to order refunds; (6) they purport to fix a ceiling of $.03 per gallon for general and administrative expense; arbitrary, unreasonable, capricious and

confiscatory action resulting in taking property without due process of law (Fifth Amendment, U. S. Constitution); (7) Do., without just compensation; (8) See No. 1; (9) See Nos. 2 and 3; (10) No statement of consideration given; (11) Contrary to facts, and see 4 and 6, supra.

protest and appeal did not take practicable precautions against occurrence of the violations.

■ The RFC has whatever rights to proceed as were inherent in DSC. See footnote 2, supra. Defendant asserts that if a right of action arose it was vested only in the administrator of the OPA and not in DSC. We disagree. See Reconstruction Finance Corp. v. Foust Distilling Co., supra, 87 F.Supp. at pages 634, 635.

We have before us the RFC Act, § 5, as amended (see 1934 Ed., 15 U.S.C.Supp., § 606(b), 1948 Ed., § 606(b), historical note) 54 Stat. 573, 574, which provides inter alia: "In order to . aid the Government * * * in its national-defense program, the Corporation is authorized * * * (2) * * * (a) to produce, acquire, and carry strategic and critical materials * * *." The DSC charter provides inter alia, "Third, that the objects and purposes of the corporation shall be to buy, sell, carry, acquire, store, transport, produce, process, manufacture, market and otherwise dispose of strategic or critical material and supplies of all kinds which may be necessary or appropriate in connection with the national defense program of the Government * * *."9

Whether or not RFC is the proper party plaintiff is a question of law or at most one of legal inferences and conclusions to be drawn from the undisputed facts. See Schreffler v. Bowles, 10 Cir., 153 F.2d 1 at pages 3, 4.

From the uncontradicted evidence it appears that all of defendant's product purchased by the DSC was for the purpose of furthering the war effort, a governmental function, and was not for use by it in any trade or business. In this connection, cf. Cherry Cotton Mills, Inc., v. United States, 59 F.Supp. 122, 103 Ct.Cl. 243, affirmed 327 .U.S. 536 at page 539, 66 S.Ct. 729, 730, 90 L.Ed. 835, speaking of the RFC, "That the Congress chose to call it a corporation does not alter its characteristics so as to make it something other than what it actually is, an agency selected by Government to accomplish purely Governmental purposes." And see Todd v. Maryland Cas. Co., 7 Cir., 155 F.2d 29 at page 38.

■ As we pointed out in our previous opinion, R.F.C. v. Foust Distilling Co., supra, 87 F.Supp. at page 634 and cases cited, particularly Provisional Government of French Republic v. Cabot, D.C., 59 F. Supp. 855 at page 857, the test as to the right of action under § 205(e) is whether one buys a commodity for use and consumption other than in the course of trade or business. The question here is whether DSC bought, not whether defendant sold alcohol for use or consumption other than in the course of trade or business. The right of action arises as an incident not of the sale but of the purchase. See Bowles v. Krodel, supra, 149 F.2d at page 399.

We see no merit to defendant's claim of estoppel or laches.

■ As to the statute of limitations, see R.F.C. v. Foust Distilling Co., supra, 87 F.Supp. 632; Rauer v. Wexler, 3 Cir., 1948, 167 F.2d 817 at page 819, and see Woods v. Stone, supra, 333 U.S. at pages 473–478, 68 S.Ct. 624. The one year statute of limitations obviously does not apply to

---

9. Plaintiff's affidavit by George B. Stoner, Vice President and General Counsel of DSC, stated inter alia: "A part of DSC's Strategic and Critical Program was the alcohol and high wines program which was undertaken to assure that the necessary supply of ethyl alcohol for war production and for essential civilian requirements would be obtainable."

"This alcohol was used for the manufacture of synthetic rubber, explosives, smokeless powder, Lend-Lease shipments to Russia and Great Britain, torpedo fuel, manufacture of poison gas, and to supply the deficit of commercial production which was required for essential civilian use."

"None of the alcohol thus acquired by DSC was used or consumed by DSC in the course of trade or business. The alcohol which was thus transferred to other Government agencies, particularly the Army and Navy, was transferred at DSC's cost. That which was sold for essential civilian use—about 25% in 1944 and 1945—was sold at OPA ceiling."

Another by Clinton S. Seltzer, an examiner for the RFC, stated that all alcohol purchased by defendant went into stockpile.

the claim on the contract for simple damages.[10] As to the claim for treble damages, plaintiff would be restricted to claims asserted within one year of defendant's failure to comply with the respective refund orders.[11]

As to the counterclaim—

We have before us the record heretofore described, including defendant's admissions contained therein and, in addition, copies of the contracts and price orders herein involved.

What was said as to alcohol refers with equal force to "High Wines" which were redistilled and stored. They were strategic materials purchased in furtherance of the war effort. The DSC was not engaged in a trade or business, did not use or consume same, did not operate for profit, but acted solely in the performance of a governmental function in war time.

Under contracts [12] containing provisions similar to those discussed supra, and notwithstanding pertinent OPA regulations [13] and price orders,[14] defendant under similar circumstances asserts its right to collect a price based upon its actual cost plus a fixed profit per gallon, notwithstanding that the OPA fixed a different price. Here

likewise no protests were filed and defendant attempts again to attack the validity and effectiveness of the price orders themselves. For the reasons heretofore stated there is no merit to the counterclaim. See Schreffler v. Bowles, supra, 153 F.2d at pages 3, 5.

Summary judgment will therefore be given, allowing plaintiff simple damages for breach of contract; treble damages for claims arising under Price Order, Rev. L–171 and Order L–207, including interest from the date each of the various amounts were due and payable; defendant to pay the costs.

Summary judgment on defendant's counterclaim will be given in favor of the RFC.

In addition to the foregoing, reasonable counsel fees will be allowed to the RFC. In view, however, of Pennsylvania Crusher Co. v. Bethlehem Steel Co., 3 Cir., 193 F.2d 445, and cases cited, we will withhold fixing the amount thereof until sufficient evidence is presented, so that the amount of same may be fixed and findings of fact in support thereof may be made.

Counsel for the plaintiff will submit an appropriate decree in compliance with the foregoing opinion.

---

10. See 6 Williston on Contracts, Rev.Ed. § 2031, p. 5698, and cf. Woods v. Wayne, 4 Cir., 1949, 177 F.2d 559 at page 560; Woods v. McCord, 9 Cir., 1949, 175 F.2d 919 at pages 921, 922.

11. See footnote 6. The claim for treble damages under L–54 would be thus excluded.

12. As to par. 1 of counterclaim—1st quarter of 1943—see par. 1 contract dated January 1, 1943.

As to pars. 2 and 6 of counterclaim—4th quarter of 1943, see par. 7 contract dated April 1, 1943.

| Amendment No. | Effective | FR Citation | Issue of | |
|---|---|---|---|---|
| 1 | 4/1/43 | 8 FR 4258 | 4/3/43 | |
| 2 | 7/1/43 | 8 FR 8947 | 6/30/43 | |
| 3 | 3/24/44 | 9 FR 3331 | 3/28/44 | |
| 4 | 4/24/44 | 9 FR 4224 | 4/20/44 | |
| 5 | 10/14/44 | 9 FR 12280 | 10/10/44 | |
| 6 | 10/11/44 | 9 FR 12411 | 10/13/44 | correction |
| 7 | 10/19/45 | 10 FR 12961 | 10/18/45 | (sic) |

13. As to the 1st and 4th quarters of 1943, see MPR No. 108, § 1499.3(b), and § 1499.972(c), issued October 22, 1942, 7 F.R. 8608, October 23, 1942.

14. 1st and 4th quarters of 1943 (pars. 1 and 2 of counterclaim) Price Order No. 22, dated October 26, 1944. 1st quarter of 1944, pars. 3, 7 of counterclaim, seek to challenge Price Order No. 48, dated October 26, 1944, issued under MPR No. 28, § 1412.263(h) (see footnote 7, supra). 3rd quarter of 1945, par. 4 of counterclaim, challenges Price Order L–207 (see footnote 6, supra). Par 5 of counterclaim challenges the amount of $35,061.80 set off by DSC against refunds owed to DSC by defendant under Price Order L–54, revised L–151, Order 207 (footnote 6, supra). The lack of merit in this position of defendant has already been demonstrated.