**KESSLER et al. v. FLEMING, Temporary Controls Administrator.**

No. 11429.

Circuit Court of Appeals, Ninth Circuit.

Aug. 15, 1947.

Rehearing Denied Sept. 25, 1947.

Emory & Howe, of Seattle, Wash. (De Wolfe Emory, of Seattle, Wash., of counsel) for appellant.

William E. Remy, David London, Albert M. Dreyer, and Nathan Siegel, all of Washington, D. C., William B. Wetherall, of San Francisco, Calif., and J. Charles Dennis, U. S. Atty., of Seattle, Wash., for appellee.

Before MATHEWS, HEALY, and BONE, Circuit Judges.

HEALY, Circuit Judge.

This is a companion suit to Shyman v. Fleming, 9 Cir., 163 F.2d 461, today decided. In the court below the two actions were consolidated for trial, separate appeals being prosecuted from the judgments entered. In the instant case the Administrator was awarded damages against appellants for overcharges on sales of Tom Burns whisky made to Shyman.

The regulation invoked by the Administrator and found applicable by the trial court is Order No. 3 of Maximum Price Regulation No. 193 (8 F.R. 3681). The total price paid for the whisky by Shyman was $273,112.50, whereas the maximum price established by the regulation mentioned was $230,251.50. The overcharges were found to be neither willful nor the result of failure to take practical precautions, hence judgment was given for the actual amount of the overcharges only.

1. It is said that the suit instituted by the district enforcement attorney in the name of the Administrator was not authorized by the latter, or more specifically, that the delegation of authority to bring suit is beyond the statutory power of the Administrator. The question is no longer an open one in this circuit. Bowles v. Wheeler, 9 Cir., 152 F.2d 34; Porter v. Gantner & Mattern Co., 9 Cir., 156 F.2d 886.

2. A prime argument for reversal is that the transactions which were the subject matter of the suit were export sales governed, not by MPR No. 193, but by the Second Revised Maximum Export Price Regulation (8 F.R. 4132). If these were export sales there were concededly no overcharges. The argument in this respect rests entirely on the contention that Shyman was an Alaskan importer rather than an exporter to Alaska. We have held in Shyman

v. Fleming, supra, in conformity with the findings of the trial court, that Shyman was an exporter, hence the sales by appellants to him are not classifiable as export sales. Such sales are defined by the Export Regulation as "any sale * * * by a seller or his agent in the continental United States to a purchaser outside thereof * * *." So defined a sale to an exporter in the continental United States is manifestly not an export sale. Cf. Login Corporation v. Porter, 9 Cir., 155 F.2d 623.

■ 3. It is urged that the Administrator was estopped from bringing the suit, or in the alternative that the suit should be withdrawn in conformity with § 12(b)(1) of the Price Control Extension Act of 1946, copied on the margin.[1] The contention is predicated on a letter to appellants signed by Seattle chief price attorney Sholly written in response to an oral request or representation of the appellants. The letter states that it is in confirmation of "our conversation of April 10, 1943, with respect to the maximum prices applicable to your sales of liquor to purchasers in Alaska and Hawaii." The letter goes on to say that "these sales are classified as export sales and are subject to the Second Revised Maximum Export Price Regulation."

The advice or letter did not emanate from any of the several officials enumerated in the quoted section of the Price Control Extension Act. Apart from this infirmity, it is inadmissible to construe the communication as having reference to the sales made by appellants to Shyman. Shyman was not a purchaser "in Alaska" but was a purchaser in Seattle. Both Sholly and appellant Kessler testified as to the conversation. Sholly said that he had no information or knowledge of the method of operation or the nature of the business of Alaska Distributors Company (Shyman), or with respect to any specific proposed transaction. And Kessler's testimony confirms this in that he says he did not describe to Sholly Shyman's methods of doing business. He had referred, he testified, only to Alaska dealers generally. There is no basis either in the conversation or in the letter for the claim that appellants had approval for its sales to Shyman as "export sales."

The point illustrates the importance of the administrative requirement that those desiring an official interpretation of the Act "or any regulation, price schedule, order, requirement or agreement thereunder, shall make a request in writing for such interpretation, * * *" setting forth in full the factual situation out of which the interpretative question arises.[2] Adherence to this regulation is imperative if conflicts or misunderstandings such as occurred here are to be avoided.

4. Section 205(e) of the Act, 50 U.S.C.A.Appendix, § 925(e), provides in substance that suit thereunder may be commenced only within one year from the date of the occurrence of the violation of a regulation, order, or price schedule. It is contended that the present action is barred, in whole or in part, for failure to bring it within the time limited by this section.

■ The complaint was filed April 27, 1944. The transactions between appellants and Shyman had their inception more than one year prior to that date. The crucial question is whether or not certain of the deliveries were made prior to April 27, 1943, since under the applicable regulation delivery constitutes a violation separate and apart from the contract to sell or of sale.[3] Schreffler v. Bowles, 10 Cir., 153 F.2d 1, 3, certiorari denied 328 U.S. 870, 66 S.Ct.

---

[1] "The Administrator may not institute any action under this subsection on behalf of the United States, or, if such action has been instituted, the Administrator shall withdraw the same—(1) if the violation arose because the person selling the commodity acted upon and in accordance with the written advice and instructions of the Administrator or any regional administrator or district director of the Office of Price Administration: * * *." Pub.Law 548, July 25, 1946, 79th Cong., 50 U.S.C.A.Appendix, § 925(e).

[2] Revised Procedural Regulation No. 1 (7 F. R. 8961), § 1300.52(a).

[3] Section 1420.1 of Maximum Price Regulation No. 193 provides: "Maximum prices for domestic distilled spirits. On and after August 5, 1942, regardless of any contract, agreement, lease or other obligation, no person shall sell or deliver domestic distilled spirits and no person in the course of trade or busi-

1366, 90 L.Ed. 1640; Pickett v. Bowles, 10 Cir., 153 F.2d 904, certiorari denied 329 U.S. 736, 67 S.Ct. 45. It is well settled that where the law creates two or more rights (as distinguished from remedies), the running of the statute of limitations as to one of such rights does not operate to bar an action based on a subsequently accruing right to the same relief. Williston, Contracts, Rev.Ed., Vol. 6, § 2031.

The essential facts are that the whisky in question was shipped to appellants at Seattle by a Chicago concern, the shipments being evidenced by bills of lading in order form issued to a firm of rectifiers in Minneapolis as shipper. All shipments were waybilled from Minneapolis and bills of lading bore the notation to notify K & L Distributors, Seattle. On April 29, 1943, prior to the arrival of the first of the series of shipments at Seattle, the documents covering that shipment were delivered by appellants to Shyman at Seattle, and simultaneously therewith Shyman paid appellants for the shipment. This was two days subsequent to April 27, 1943. From this it is argued by appellee that the earliest possible delivery from appellants to Shyman, within the meaning of the regulation, took place two days short of one year prior to the institution of the action.

Both parties, however, ground their arguments as to when delivery occurred primarily on the determination of the question as to when title to the goods passed to Shyman. Appellants rest their contention largely on provisions of § 19 of the Uniform Sales Act, in force in the states of Washington, Illinois, and Minnesota, to the effect that where there is a contract to sell unascertained goods by description, and goods of that description are unconditionally appropriated to the contract by the seller with the assent of the buyer, the property in the goods thereupon passes to the buyer, and more particularly upon the provision of that section to the effect that "where * * * the seller delivers the goods to * * * a carrier * * * for the purpose of transmission to * * * the buyer, he is presumed to have unconditionally appropriated the goods to the contract. * * *" Rem.Rev.Stat.Wash., § 5836—19. Appellee's position is that the intention of the parties is made controlling under § 18 of the Uniform Sales Act. This provides that "where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred." [4] Rem.Rev. Stat.Wash. § 5836—18.

The question as to when the parties intended title to pass presented an issue of fact to be resolved by the trial court on consideration of all the evidence bearing on the subject. The court found that title did not pass to Shyman until the bills of lading were endorsed and delivered to him in Seattle. It said that "even though title passed to K & L upon delivery to them of order bills of lading covering shipment of the goods delivered to the carrier in Minneapolis, title did not pass from K & L to Shyman until the bills of lading were endorsed and delivered to Shyman in Seattle. Before then Shyman did not have and could not have had any control over the goods which were later delivered to Shyman. As to none of the merchandise was a bill of lading delivered to Shyman before April 29, 1943." We are not able to say that the finding is clearly erroneous.

Rule 3 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides that "a civil action is commenced by filing a complaint with the court." If these rules are applicable, the date of filing the complaint must be held to mark the time of the commencement of the action, hence the suit was timely begun as respects the transaction in its entirety, unless, perhaps, there was lack of diligence in the service of process. As to this it appears that summons was served personally on appellant Levine on April 28, 1944, and at the same

---

ness shall buy or receive domestic distilled spirits at prices higher than the maximum prices set forth in * * * Sec. 1420.13; and no person shall agree, offer, solicit, or attempt to do any of the foregoing."

[4] Subdivision 2 of that section provides that "for the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case."

time a copy was left with Levine for delivery to appellant Kessler, his partner.[5] The latter objected to the truth of the Marshal's return in a motion filed May 17, 1944, and thereafter service was made on Kessler on May 24, 1944. The court properly found that service of process was made with due diligence as contemplated by the Federal Rules.

Appellants argue, however, that the action, being for treble damages, is in its nature penal and quasi-criminal, and that accordingly the Federal Rules of Civil Procedure are not controlling. The state law, it is said governs; and it is insisted that under Washington law the date of completion of service of process, rather than the date of filing the suit, marks the time of commencement. We think otherwise. The treble damage sanction of the Emergency Price Control Act may in a sense be considered a penalty, but this fact does not necessarily serve to change the nature of the remedy provided. It is reasonably clear that Congress imposed the sanction as a measure of civil redress. As observed in Crary v. Porter, 8 Cir., 157 F.2d 410, 414, increased or multiple damages are not authorized to be assessed under § 205(e) of the Act as a substitute for criminal punishment. Criminal sanctions for violations are separately provided for in § 205(b). Cf. Helvering v. Mitchell, 303 U.S. 391, 58 S. Ct. 630, 82 L.Ed. 917. Multiple or exemplary damages whose allowance depends upon the recovery of actual damages, have never, so far as we are aware been regarded as amounting to a criminal penalty. The view that the treble damage sanction is remedial rather that punitive has been taken in other cases aside from Crary v. Porter, supra. See Amato v. Porter, 10 Cir., 157 F.2d 719. Cf. Culver v. Bell & Loffland, 9 Cir., 146 F.2d 29, dealing with the cognate provision of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. The decision in Bowles v. Farmers Nat. Bank, 6 Cir., 147 F.2d 425, is in part contra, but the case recognizes that the action provided is a civil one.

Affirmed.

[5] Concerning suits against a partnership, consult Rules 4(d) (3) and 17(b) of the Federal Rules of Civil Procedure.