**SHYMAN v. FLEMING, Temporary Controls Administrator.**

No. 11422.

Circuit Court of Appeals, Ninth Circuit.

Aug. 15, 1947.

Rehearing Denied Oct. 8, 1947.

Writ of Certiorari Denied Dec. 22, 1947.

See 68 S.Ct. 266.

Daniel B. Trefethen, of Seattle, Wash., for appellant.

William E. Remy, David London, Alfred M. Dreyer, and Nathan Siegel, all of Washington, D. C., William B. Wetherall, of San Francisco, Cal., and J. Charles Dennis, U. S. Atty., of Seattle, Wash., for appellee.

Before MATHEWS, HEALY, and BONE, Circuit Judges.

HEALY, Circuit Judge.

This is an appeal from a judgment, in a suit by the Administrator, awarding damages for a violation of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 901 et seq., and enjoining future violations.

Appellant (doing business as Alaska Distributors Co.) was for the period from April to September 1943 a resident of Seattle, where he maintained an office. During this time he purchased locally from K & L Distributors various lots of Tom Burns whisky and sold and delivered the same to purchasers in Alaska. He was licensed to do business in that Territory and maintained agents there to solicit orders and make contracts. Orders and proceeds of sales were forwarded to him in Seattle, and arrangements for shipping, billing, and invoicing were made in Seattle. Appellant sold only at wholesale and only in Alaska. The whisky, while awaiting shipment to the Territory, was upon its arrival from Minneapolis warehoused at Seattle in the original packages under the laws of the state of Washington and the regulations of the Washington State Liquor Control Commission. During the time in question the Second Revised Maximum Export Price Regulation (8 F.R. 4132), was in effect. The sales were at prices in excess of those determinable under that Regulation.

Appellant's primary contention is that he was not an exporter but was an importer into Alaska, hence the sales were not subject to classification as export sales. The dispute on the point presents an issue of fact; and the trial court resolved the controversy against appellant, finding that he was engaged in the business of exporting Tom Burns whisky to purchasers in Alaska. The record adequately supports the finding. Being an exporter, appellant's sales were within the explicit terms of the Export Price Regulation. The definition of the term "export sale," as found in § 11 of the Regulation, is copied on the margin.[1] While appellant contends the contrary, Maximum Price Regulation No. 194 (7 F.R. 971, 3663) is clearly inapplicable to the transaction.[2]

Another point urged is that in

[1] "Sec. 11. Definitions. (a) When used in this maximum export price regulation the term:

"(1) 'Export' or 'export sale' means:

"(i) Any sale of a commodity by a seller or his agent in the continental United States to a purchaser outside thereof in which the selling or invoicing is done in the continental United States, or is done in the continental United States on behalf of a principal or parent firm in the continental United States, and the commodity sold is or has been transported from the continental United States to a point outside thereof;

" * * *."

[2] This regulation (§ 1418.63(5) ) contains the following provision:

"Sales and deliveries to a buyer in the Territory of Alaska do not include sales from a seller outside the Terri-

the absence of a written order or regulation establishing dollars and cents ceiling prices at Seattle no basis exists for the charge of price violation. The gist of this argument is that the Administrator was without power to establish maximum prices by formula, as was done in respect of Tom Burns whisky. A short answer to the argument is that it amounts to an attack on the validity of the regulation cognizable only in the Emergency Court of Appeals. Apart from that, it is settled that ceiling prices may be made determinable by reference to a formula. Martini v. Porter, 9 Cir., 157 F.2d 35; Blumenthal v. United States, 9 Cir., 158 F.2d 883. It is claimed, also, that the formula prescribed was so vague and complex that appellant was unable to ascertain the applicable ceiling prices for his product. Assuming this to be true, adequate avenues of relief were open to him by application to the Administrator for an authoritative written interpretation (§§ 1300.51, 1300.52(a), Revised Procedural Regulation No. 1, F.R. 8961), or by application for an adjustment as provided in § 12 of the Regulation. Appellant resorted to none of the available methods of dispelling his uncertainties.

■ Section 3(a) (1) of the Regulation provides, in part: "(a) In the case of an exporter other than the manufacturer or producer of the commodity the maximum export price shall be either: (1) The price at which the commodity was acquired or the maximum domestic price which would be applicable to a current sale of the commodity to the exporter by the supplier thereof. * * *" It is insisted that the court erroneously based its determination of an overcharge on the maximum domestic price alternative, and did not take into consideration appellant's cost of acquisition. This argument is predicated on the fact that appellant, if an exporter, concededly paid above-ceiling prices to his suppliers.

Assuming that appellant was free to elect either basis for computation of his price, it seems plain that the phrase "the price at which the commodity was acquired" can not fairly be construed to include an over-ceiling price. The rational interpretation of the provision is that it has reference to an acquisition cost not violative of law.[3] The construction contended for here would tend to defeat the primary purpose of the regulation as disclosed in the Statement of Considerations involved in the issuance of the Export Price Regulation. Its declared purpose was "to prevent excessive diversion of American goods to foreign markets which would have been encouraged by uncontrolled export prices and to extend to buyers abroad protection similar to that afforded buyers in this country. * * *"

■ Another argument is that since appellant's methods of fixing his cost prices for Tom Burns whisky followed the established business practices in the Alaskan liquor industry, the application of the regulation to him amounts to a violation of § 2(h) of the Act.[4] Assuming that the pric-

tory of Alaska to a purchaser in the Territory of Alaska. Export sales from a seller in the continental United States to a purchaser in Alaska shall be governed by the maximum prices established for export sales by the Revised Maximum Export Price Regulation."

[3] In the interpretations issued in the form of questions and answers that accompanied the regulation this was the construction indicated by the Administrator in question and answer 12. The question and answer were as follows:

"Q. An exporter buys a commodity from his supplier at a discount of 20 percent from the latter's list price of $1. If he elects to use the supplier's current domestic ceiling price to him as his basic price, instead of his actual cost of acquisition, would the basic price be $1 or 80 cents? A. It depends on whether the discount represents a reduction below the supplier's current maximum domestic price to him, taking into consideration any discounts, allowances, or differentials established by the applicable domestic schedule. If the supplier's domestic ceiling price to him is $1, the Regulation would permit the exporter to retain the benefit of any discount, allowance, or commission which represents a reduction of the price below that figure. If, on the other hand, the net price of 80 cents is the maximum which his supplier is permitted to charge him, he would not be permitted to use a higher figure at his basic price."

[4] "The powers granted in this section shall not be used or made to operate to compel changes in the business practices, cost practices or methods, or

ing practices pursued here were within the scope of that section, the argument amounts to an attack on the validity of the regulation. Such an attack is cognizable only in a proceeding in the Emergency Court. Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834.

Appellant claims that he was entitled to rely on certain oral representations of the chief price attorney of the Office of Price Administration at Seattle as to what constituted the appropriate price ceilings. There is no merit in the point. The avenue was open to apply in writing for an official interpretation binding on the Administrator, and the procedure was not followed.

In a suit concurrently brought against the K & L Distributors, appellant's suppliers, the Administrator sought judgment for the overcharges of these suppliers in making their sales to appellant.[5] It is said that this amounts to an attempt to collect twice for overcharges growing out of the same transaction. We are unable to agree. In each of these instances a separate and distinct right of the government was violated. United States v. Pan-American Petroleum Co., 9 Cir., 55 F.2d 753, 777.

The cessation of price control over sales of whisky renders moot questions raised as to the injunctive relief granted below. Nor has appellant any just ground to complain of the amount of the judgment. The court found that none of the overcharges was willful nor the result of failure to take practical precautions, hence only single damages were assessed, and appellant was required to give up no more than the amount unlawfully received.

Other questions are suggested in the specifications of error. We have considered all of them but regard them as without merit.

Affirmed.

means or aids to distribution, established in any industry, * * * except * * * to prevent circumvention or evasion of any regulation, order, price schedule, or requirement under this Act." 50 U.S.C.A.Appendix, § 902(h).

[5] Kessler & Levine v. Fleming, 9 Cir., 163 F.2d 464. The Kessler & Levine case was consolidated for trial with the case immediately before us.