In re GRAND JURY PROCEEDINGS
(Clinton MANGES).

Clinton MANGES, Intervenor-Appellant,

v.

UNITED STATES of America, Appellee.

No. 84–3791.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 6, 1984.

Decided Oct. 23, 1984.

Gerald H. Goldstein, Goldstein, Goldstein, & Hilley, San Antonio, Tex., for intervenor-appellant.

Thomas C. Wales, Asst. U.S. Atty., Seattle, Wash., for appellee.

Before WRIGHT, PREGERSON and CANBY, Circuit Judges.

CANBY, Circuit Judge:

This case presents an issue of first impression in this circuit. Appellant Clinton Manges contends that his fifth amendment privilege against self-incrimination requires the district court to quash a documentary subpoena directed not to Manges, but to the bookkeeper of his sole proprietorship. The district court disagreed. On the facts presented, we affirm.

BACKGROUND

In its investigation of possible criminal conduct by certain bank loan officers and loan recipients, a federal grand jury directed a subpoena duces tecum to Nada Lee Robertson, a bookkeeper with the Duval County Ranch Company, a Texas corporation wholly owned by appellant Clinton

Manges. In addition to her duties for the corporation, Robertson also maintained books and records for Manges' sole proprietorship.[1]

The subpoena directed Robertson to produce all the records in her custody relating to the sole proprietorship. Manges filed a motion to intervene and motion to quash the subpoena. The district court granted Manges' motion to intervene.

■ In arguing the motion to quash before the district court, the government "limited the scope of the subpoena to documents retained in Ms. Robertson's office and in which she made entries or to which she had access in the performance of her job." Tr. of Hearing, at 63. Finding that Robertson's "custody and ... possession of the documents at issue" insured that "the enforcement of the subpoena duces tecum as limited by the government will not result in any compulsion directed at intervenor," *id.* at 67–68, the district court denied Manges' motion to quash.[2]

## ANALYSIS

### I. Timeliness of Appeal

■ The government urges us to dismiss this appeal as untimely. It contends that Manges' appeal, of which notice was filed 27 days after the district court's order, should be governed by Fed.R.App.P. 4(b). That rule applies to criminal cases and requires that notice of appeal be filed within 10 days. The government argues that all of the requirements of expedition that apply to criminal appeals should apply here. We do not disagree with that assessment, but cannot rewrite the rule to make it apply to proceedings that are not within its clearly stated scope. We have on prior occasions treated appeals from orders concerning grand jury subpoenas as civil actions subject to the provisions of Fed.R. App.P. 4(a). *See e.g., United States v. Weinberg,* 436 F.2d 416 (9th Cir.1970); 439 F.2d 743 (9th Cir.1971); *cf. United States v. Bonnell,* 483 F.Supp. 1091 (D.Minn.1979) (grand jury subpoena treated as civil action for purposes of certifying appeal from an order refusing to stay its enforcement). We have done so only implicitly. We now make explicit the rule that such appeals are governed by the 30- or 60-day notice requirement of Fed.R.App.P. 4(a). Accordingly, this appeal is timely.

### II. Fifth Amendment Claim

■ The fifth amendment privilege against compelled self-incrimination does not protect the contents of the business records of a sole proprietorship. *United States v. Doe,* —— U.S. ——, 104 S.Ct. 1237, 1241, 79 L.Ed.2d 552 (1984). Even if the records were prepared by the sole proprietor, so long as they were voluntarily prepared, they may be subpoenaed and used against the proprietor without violating his right against compulsory self-incrimination. *Id.; see Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).

It is a different matter, however, if the proprietor himself is compelled to produce the records. "Although the contents of a document may not be privileged, the act of producing the document may be." *Doe,* —— U.S. at ——, 104 S.Ct. at 1242 (quoting *Fisher,* 425 U.S. at 410, 96 S.Ct. at 1580). The Supreme Court therefore held in *Doe* that a proprietor could not be compelled to produce his records because the act of production, under the facts of that case, would have involved compelled admissions that the documents existed, that they were in the proprietor's possession, and that they were authentic. *Doe,* —— U.S. at ——, & nn. 11 & 12, 104 S.Ct. at 1243 & nn. 11 &

---

1. Although Robertson received a salary drawn on the corporation's checking account, the record established that a fixed percentage of the general administrative expenses of Duval, including its payroll, was allocated to the sole proprietorship.

2. Although denial of a motion to quash a subpoena is not ordinarily an appealable interlocutory order, this case falls within the exception made for that "limited class of cases where denial of immediate review would render impossible any review whatsoever of an individual's claim." *United States v. Ryan,* 402 U.S. 530, 533, 91 S.Ct. 1580, 1582, 29 L.Ed.2d 85 (1971). The usual route of refusing to obey the subpoena and litigating its validity in contempt proceedings is not open to Manges because the subpoena was not directed to him.

12. Consequently, the proprietor could only be compelled to produce the records if he were formally granted immunity for the act of production. *Id.* 104 S.Ct. at 1245.

 The government here concedes that it cannot compel production of the proprietorship documents from Manges himself. It has not directed its subpoena to him, but to his bookkeeper. At first blush, that fact might seem to be the end of the matter. In *Couch v. United States*, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973), the Supreme Court held that a taxpayer's records in the hands of his accountant could be subpoenaed without violating the fifth amendment. In so holding, the Court reminded us that the privilege against self-incrimination "is a *personal* privilege: it adheres basically to the person, not to information that may incriminate him." *Id.* at 328, 93 S.Ct. at 616 (emphasis in original).

The Supreme Court went on to say in *Couch,* however, that

> situations may well arise where constructive possession is so clear or the relinquishment of possession is so temporary and insignificant as to leave the personal compulsions upon the accused substantially intact.

*Id.* at 333, 93 S.Ct. at 618. We take this dictum to mean that possession of records by an employee might be so insignificant or fleeting as to leave essentially unaltered the incriminating testimonial effects the act of production would visit upon the employer. An example might occur were a janitor to move a box of records to clean behind them; a subpoena directed to him while he held the box might command production in a way that would testimonially incriminate his employer who regularly exercised dominion over the records. We need not rule on this or other examples of fleeting possession, however, for nothing of the sort has occurred here.

Robertson was neither a janitor nor a file clerk; her relationship to the proprietorship

documents was not a matter of bare access or fleeting custody. As bookkeeper, Robertson actively prepared or maintained the journals, account payable ledgers, and formal check registers of the sole proprietorship. Manges, on the other hand, did not exercise dominion over the records. Robertson could not recall a single instance in which Manges personally came to her and asked to see any of the records, nor did she review with Manges the books upon which she regularly made entries. Manges was rarely in the office where the records were kept, and his visits there were unrelated to the records.

Given these facts, Manges had effectively delegated custody and control of the records to Robertson.[3] We therefore fail to see how production of the records by Robertson would involve testimonial incrimination by Manges. The situation is close to that in *Couch*, and falls within its rule. The subpoena may be enforced. *Accord Matter of Grand Jury Empanelled (Colucci)*, 597 F.2d 851 (3d Cir.1979).

AFFIRMED.

---

3. These facts render *In re Grand Jury Proceedings (Kent)*, 646 F.2d 963 (5th Cir.1981), clearly distinguishable. There, the subpoena was directed to the comptroller of a proprietorship, who merely had access to the records in issue.

The sole proprietor actively and personally managed the office where the records were kept. The court upheld the proprietor's fifth amendment objection to the subpoena.