Jess A. **RODRIGUEZ**, and Donna R. Rodriguez, Plaintiffs,

v.

**FEDERAL SAVINGS and LOAN INSURANCE CORPORATION,** Defendant.

No. C–88–20752 RFP.

United States District Court, N.D. California.

Jan. 18, 1989.

Joseph L. Alioto, Alioto & Alioto, San Francisco, Cal., for plaintiffs.

Steven A. Rosenberg, Asst. Deputy Director, Office of Enforcement, Federal Home Loan Bank Bd., Washington, D.C., for defendant.

## ORDER

PECKHAM, District Judge.

### I. INTRODUCTION

Plaintiffs Mr. Jess Rodriguez and Ms. Donna Rodriguez ("the Rodriguez family") seek to quash a subpoena *duces tecum* issued by the Federal Savings and Loan Corporation ("FSLIC") to the Security Pacific National Bank to produce certain records pertaining to the Rodriguez family personal bank account.[1] Plaintiffs argue that FSLIC has not satisfied the requirements of the Financial Right to Privacy Act ("RFPA"), 12 U.S.C. § 3410, that governs customer challenges to investigative subpoenas of financial institution records. In addition, they contend that the bank's production of the records would violate their Fifth Amendment privilege against self-incrimination.

At the outset, we note Section 1110 of the RFPA (codified at 12 U.S.C. § 3410) governs both the nature and standards for customer challenges to investigative subpoenas. It provides that the proceeding shall be summary in nature, specifying that "all such proceedings shall be completed and the motion decided within seven calendar days of filing of the Government's response." 12 U.S.C. § 3410(b). It further states:

> If the court finds ... that there is a demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry, it shall deny the motion [to quash].

12 U.S.C. § 3410(c). Prior to beginning discussion, we note that plaintiffs contend that their Fifth Amendment rights extend above and beyond the confines of the statute and thus this proceeding has been more protracted than that contemplated by the statute.

### II. BACKGROUND

FSLIC is conducting a formal examination of the affairs and ownership of Saratoga Savings and Loan Association ("Saratoga Savings") and California Housing Securities ("CHS"). Saratoga Savings is a Cali-

---

1. Plaintiffs also seek to amend their complaint to include prayers for injunctive relief and damages for the alleged Fifth Amendment violation and to conduct discovery regarding whether the subpoena should be quashed. These motions are resolved by our determination regarding the motion to quash.

fornia-chartered stock savings and loan insured by FSLIC, and CHS owns all the outstanding stock of Saratoga. Mr. Rodriguez is the Chairman of the Board of Saratoga and has served as Saratoga's CEO; he owns all of the outstanding stock of CHS and thus directly or indirectly own and controls Saratoga Savings. Ms. Rodriguez served as a director and officer of Saratoga Savings from 1984 to 1988. Both institutions and their officers are therefore subject to FSLIC's regulatory powers under 12 U.S.C. § 1730a.

In April 1987 during a normal examination of Saratoga and CHS, the Examiners of the Federal Home Loan Board (FHLB) discovered that Saratoga had made an unsecured $400,000 loan that potentially violated FSLIC regulations prohibiting FSLIC-insured institutions from making loans to affiliated persons. *See,* 12 C.F.R. § 563.43. During FSLIC's subsequent investigation into this and other possible irregularities, FSLIC discovered information that led them to believe that the Rodriguez family had financially benefitted from this loan. Most particularly, they had deposited a check for the net proceeds into their account at the Security Pacific National Bank in September 1987.[2]

FSLIC now seeks to determine whether grounds exist to commence removal-and-prohibition proceedings against the Rodriguez family for this transaction and other alleged irregularities. In order to remove a director of an institution pursuant to 12 U.S.C. § 1730(g), the individual must have received financial benefit from the regulatory violation. FSLIC believes that the Rodriguez family deposited profits obtained from the regulatory violation into their personal account in September 1987. They issued the investigative subpoena on November 4, 1988 to the Security Pacific National Bank to obtain concrete evidence of this transaction. The subpoena requests three specific items: (1) a copy of the signature card establishing their personal account, (2) a copy of the check deposited into their account, and (3) a copy of the bank statement showing activity in the account in September 1987.[3]

On the same day FSLIC issued the subpoena to Security Pacific, FSLIC sent to the Rodriguez family and to their attorney, Mr. Joseph Alioto, a letter and related documents constituting a Right to Privacy Act notice. FSLIC also notified Security Pacific advising it not to produce the records until it receives an RFPA compliance certificate from FSLIC. After the Rodriguez family moved to quash the subpoena under 12 U.S.C. § 3410, FSLIC requested that the court deny the petition on an expedited basis. The parties appeared before the court on January 6, 1989. To date, FSLIC has not sent the RFPA compliance letter to Security Pacific.

## III. DISCUSSION

The plaintiffs contest the subpoena on two grounds: (1) that FSLIC is not entitled to the information under the RFPA, and (2) that the Bank's production of the records would violate their Fifth Amendment privilege against self-incrimination.

**2.** At hearing, plaintiffs asserted that the Examiners of the FHLB are competitors of the Rodriguez family and have impermissably undertaken this investigation in cooperation with FSLIC to harass and hinder them. Plaintiffs have not provided any evidence to substantiate this charge. In contrast, FSLIC has provided the court with an *in camera* declaration as permitted under section 3410(b) that specifies the details of the transaction in considerably more detail. While we cannot assess the FHLB's motivations in commencing the investigation, we are satisfied that FSLIC has a well-founded basis for their allegations that a regulatory violation occurred.

**3.** The subpoena to the bank specifies:

(1) a copy of the signature card and any other documents relating to or incident to the establishment of (and any subsequent changes to) the account.
(2) a copy of (a) the front and back of a check dated September 23, 1987, in the amount of $381,583.06, payable to the order of Jess A. Rodriguez and Donna R. Rodriguez, that was deposited into the account on or about September 23, 1987, and (b) the deposit slip relating to that deposit.
(3) a copy of any and all bank statements showing activity in the account during September 1987.

## A. RFPA

Section 1110(c) of the RFPA provides: if the court finds ... that there is a demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry, it shall deny the motion.

The court may also quash the subpoena if it finds "that there has not been substantial compliance with the provisions of this chapter." 12 U.S.C. § 3410(c). The plaintiffs allege (1) that FSLIC failed to substantially comply with RFPA's provisions by failing to provide them "with sufficient specificity the nature of the law enforcement inquiry" as required in 12 U.S.C. 3405, (2) that it is not part of a legitimate law enforcement inquiry, and (3) that it is not relevant to such an inquiry. *See, Donovan v. U.A. Local 38 Plumbers and Pipe Trades Pension Fund,* 569 F.Supp. 1488 (N.D.Cal.1983) (Wiegel, J.) (applying this standard to deny motion to quash Labor Department subpoena that sought bank records related to a pension fund's loan applications).

### 1. Sufficiency of Notice

Plaintiffs contend that Mr. Rodriguez is unaware of "the nature of the law enforcement inquiry due to the lack of required reasonable specificity of its nature on the face of the FSLIC subpoena." Although such a claim may be supportable technically, plaintiffs have clearly received adequate notice of FSLIC's inquiry.

In its letter to the Rodriguez family notifying them of the subpoena, FSLIC informed them as part of its formal examination into Saratoga Savings and CHS it sought information concerning the proceeds from the sale of the property purchased with the unsecured $400,000 loan. It did not provide any further details in the letter concerning the alleged regulatory violation. In its papers filed in this proceeding, however, FSLIC has revealed that it believes that Saratoga Savings made a loan to a joint venture and that the two plaintiffs were affiliated with that joint venture in violation of applicable law. The statute requires that the nature of the inquiry be stated with sufficient specificity. Even if that was not accomplished in the letter, it has been at this stage. We find that plaintiffs have received adequate notice.

### 2. Legitimate Law Enforcement Inquiry

It is clear that this subpoena arises in the course of a legitimate law enforcement inquiry. FSLIC is empowered by statute to determine whether entities it regulates comply with applicable law through use of certain enforcement powers including the issuance of subpoenas and subpoenas *duces tecum.* 12 U.S.C. §§ 1730(g), 1730a. Moreover, Chief Judge Ingram of this court recently arrived at the same conclusion in upholding FSLIC's power to subpoena the plaintiffs' tax returns as part of this investigation. *See, FSLIC v. Jess A. Rodriguez,* No. C–88–20479 WAI (N.D.Calif., order dated Nov. 28, 1988).

### 3. Relevancy of Bank Records

In a conclusory statement, the plaintiffs assert that the bank records are not relevant to the inquiry. Such an assertion is difficult to credit seriously.

The statute specifies that the court should deny the motion to quash if there exists "a reasonable belief that the records sought are relevant to the inquiry." In this case, FSLIC notes that it is tracing profits that it believes plaintiffs may have received due to their alleged participation in a joint venture. It has provided documentation that supports more than a reasonable belief that such participation occurred. The subpoena requests only documentation that will establish whether proceeds from this transaction were deposited in the plaintiff's personal bank account. FSLIC has thus established the relevancy of this subpoena to the investigation.

## B. FIFTH AMENDMENT

### 1. Introduction

The heart of plaintiffs' challenge is that the bank's production of the requested documents would violate their Fifth Amendment privilege against self-incrimination. Relying on *United States v. Cohen,* 388

F.2d 464 (9th Cir.1967), the Rodriguez family asserts that Ninth Circuit authority provides that private records prepared and maintained by a third party are protected by the privilege. Although we have significant doubts about the applicability and viability of *Cohen,* we do not even need to reach this issue. We conclude that any privilege the plaintiffs might have with regard to the documents may not be asserted since the bank rather than the Rodriguez family is required to produce the documents.

## 2. Self–Incrimination

The Fifth Amendment privilege applies only to *self*-incrimination. *Couch v. United States,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973). The courts have traditionally viewed only those persons in possession of incriminating documents as subject to governmental compulsion and thus have not allowed an individual to assert the privilege against self-incrimination when the government issues subpoenaes for documents to third parties. *In re Grand Jury Proceedings (Manges),* 745 F.2d 1250 (9th Cir.1984) (upholding subpoena that requires bookkeeper to produce documents even though principal could successfully assert privilege if he possessed documents); *Kelley v. United States,* 536 F.2d 897 (9th Cir.1976) (finding bank customer has no Fifth Amendment privilege that prevents bank from turning over documents) [4]. The Supreme Court stated the rationale clearly in *Couch.*

> It is important to reiterate that the Fifth Amendment privilege is a *personal* privilege: it adheres to the person, not to information that may incriminate him. As Mr. Justice Holmes put it: "A party

is privileged from producing the evidence but not from its production." The Constitution explicitly prohibits compelling an accused to bear witness "against himself"; it necessarily does not proscribe incriminating statements elicited from another.

409 U.S. at 328, 93 S.Ct. at 616 (emphasis in original; citations omitted). As the *Couch* court recognized, however, possession is not a *per se* test to determine when the privilege may be asserted. 409 U.S. at 336 n. 20, 93 S.Ct. at 620 n. 20. It continued:

> situations may well arise where constructive possession is so clear or the relinquishment of possession is so temporary and insignificant as to leave the personal compulsions upon the accused substantially intact.... We hold today that no ... Fifth Amendment claim can prevail where, as in this case, there exists no legitimate expectation of privacy and no semblance of governmental compulsion against the accused.

409 U.S. at 333–36, 93 S.Ct. at 618–20 (footnotes omitted). To determine if plaintiff's Fifth Amendment rights are implicated in this instance, we must therefore examine the Rodriguez family's legitimate expectation of privacy in and the nature of the bank's possession of the card, check, and statement.[5]

The plaintiffs contend that they enjoy a legitimate expectation of privacy and retain constructive custody in the three items requested by FSLIC. We disagree on both counts. Plaintiffs argue that the RFPA establishes a customer's expectation of privacy in his or her financial records. Such a position is tenuous at best. Although the RFPA uses the language "right to privacy", Congress clearly indicated that

---

**4.** Although at first blush *Kelley* might seem dispositive of the Fifth Amendment issue in this case, petitioner notes correctly that the Ninth Circuit in that instance relied on *United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976). Congress responded to the *Miller* holding that a customer did not have any expectation of privacy in bank records with the RFPA's balancing test. We disagree pointedly with plaintiff's interpretation of the RFPA, but we do agree that *Kelley* should no longer be cited for the specific proposition that a customer may not

claim a Fifth Amendment right in his or her bank records.

**5.** Plaintiffs contend that the *Couch* holding should be limited to tax collection cases and presumably that individuals in non-tax cases should be allowed to assert the privilege in a broader array of settings. They provide no authority for this proposition, however. Moreover, the Ninth Circuit has clearly applied *Couch* in non-tax proceedings. *See, In re Grand Proceedings (Manges),* 745 F.2d at 1252.

the confidentiality of customer records would be balanced against the government's interest in ensuring financial institution compliance with applicable regulations. As long as the government establishes that a reasonable belief exists that the documents are relevant to a legitimate law enforcement inquiry, they are to be turned over. The RFPA requires that the government make a showing of relevance; it does not provide an absolute expectation of privacy.

■ Plaintiffs also strain to establish constructive possession over these three items. To provide examples where such conditions might be met, the *Couch* court cited two cases in which persons stored documents in the offices of third parties but clearly retained immediate control. *See*, 409 U.S. at 333 n. 16, 93 S.Ct. at 618 n. 16. The Court distinguished such cases from the situation in *Couch* where an accountant who worked as an independent contractor was given tax records over a long period of time and retained possession of them. Like the accountant in *Couch*, the bank in this instance remained independent of the person seeking to assert the privilege and retained the documents. *See also, Fisher v. United States*, 425 U.S. 391, 398, 96 S.Ct. 1569, 1574, 48 L.Ed.2d 39 (1976) (finding taxpayer documents given to attorneys to assist in defense during IRS investigation not to be held constructively). In contrast to the cases provided to illustrate constructive possession where no third party gained access to the documents, the Security Pacific National Bank was necessarily involved with each: it created the signature card and statement and processed the check. This is not one of those situations suggested in *Couch* where constructive possession is so clear or relinquishment of possession so temporary and insignificant to leave the personal compulsion upon the taxpayer substantially intact.

3. Applicability of *Cohen*

Despite the *Couch* holding, plaintiffs argue that we are bound to uphold the mo-

tion to quash by the authority of *United States v. Cohen*, 388 F.2d 464 (9th Cir. 1967). In *Cohen*, the Ninth Circuit found that taxpayer Cohen's Fifth Amendment rights against self-incrimination were implicated when the IRS sought to compel production of documents from his accountant. After the subpoena issued, Cohen retrieved the documents from his accountant. In part for this reason and in part because the case predated *Couch*, the court never directly addressed whether Cohen's original lack of possession precluded him from asserting his Fifth Amendment right.[6] The court rested its conclusion upon the "purely personal" nature of the documents, noting that "they were plainly intended for no eyes but those Cohen might designate." 388 F.2d at 471.

At the outset, we note that *Cohen* is easily distinguished from the instant proceeding. In contrast to Cohen, the Rodriguez family does not have possession of the records. More importantly, unlike the personal documents that might potentially be considered equivalent to Cohen's own statements, the signature card, the check, and the statement are clearly bank records over which the plaintiffs do not have exclusive control and in which they have only a limited expectation of privacy. Moreover, although *Cohen* has not been completely overruled, we have significant doubts on its continued vitality. *See, Matter of Fred R. Witte Center Glass No. 3*, 544 F.2d 1026 (9th Cir.1976) ("*Cohen* must be viewed as implicitly overruled to the extent that it is contrary to *Fisher*"). The Supreme Court has repudiated the *Cohen* approach that turns upon the contents of the documents and now focuses upon the act of communicating inherent in the production of records to determine if the privilege exists. *See, Braswell v. United States*, 487 U.S. ——, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988); *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). For both reasons, *Cohen* is not applicable here.

We thus conclude that the plaintiffs may not assert the Fifth Amendment privilege

---

**6.** The Court did address the related issue of whether Cohen's apparent duty to surrender the documents to the accountant precluded the assertion of his rights.

to preclude the bank's production of the signature card, check, or statement.

## IV. CONCLUSION

We find that the government has met its burden under the RFPA and that plaintiffs may not assert a Fifth Amendment privilege against self-incrimination for records subpoenaed from their bank. The motion to quash is denied.

IT IS SO ORDERED.