Thomas W. BREAKEY, Movant,

v.

INSPECTOR GENERAL of the UNITED STATES DEPARTMENT OF AGRICULTURE, Respondent.

No. 93–CV–10250–BC.

United States District Court, E.D. Michigan, N.D.

Nov. 4, 1993.

Gregory L. McClelland, Lansing, MI, for movant.

Michael J. Hluchaniuk, Asst. U.S. Atty., Bay City, MI, Katherine R. Shanabrook, Chief Counsel to the Inspector Gen., Office of

Legal Counsel, USDA–OIG, Washington, DC, for respondent.

## MEMORANDUM OPINION AND ORDER DENYING CUSTOMER CHALLENGE TO GOVERNMENT SUBPOENA

CLELAND, District Judge.

### I. INTRODUCTION

This case is before the Court on Thomas Breakey's (Movant) customer challenge to an administrative subpoena *duces tecum* issued by the Office of the Inspector General. Oral argument on the challenge (and the response thereto) was held on October 18, 1993. For the reasons stated herein,

IT IS ORDERED that the customer challenge to the administrative subpoena is DENIED, and

IT IS FURTHER ORDERED that the subpoena shall be ENFORCED.

### II. BACKGROUND

On August 13, 1993, the Office of the Inspector General of the United States Department of Agriculture ("OIG" and "USDA" respectively) issued administrative subpoena *duces tecum* # 2969 ("subpoena") with a cover letter to Great Lakes Bancorp. See Government's Response to Customer Challenge ("Government's Response") Att. 1. The subpoena directs Bancorp to produce financial account records of eleven apartment building projects, each either owned or managed by Movant.[1] As is required by the Right to Financial Privacy Act, 12 U.S.C. §§ 3401–22 (1989 & Supp.1993) ("RFPA" or the "Act"), the OIG personally served a copy of the subpoena, along with the requisite customer notice forms[2], on Movant. Movant filed a timely challenge to the subpoena on August 26, 1993, alleging that the government had failed to comply with the requirements of the

Act as follows: (1) the government's notice fails to state with "reasonable specificity" the nature of the law enforcement inquiry pursuant to 12 U.S.C. § 3405(2), (2) the customer notice fails to "reasonably describe" the records requested, but instead makes a blanket request[3], and (3) the subpoena is merely an attempt to harass the movant, as is shown by prior unsuccessful attempts to secure the records. See Movant's Customer Challenge 2.

The subpoena requests documents relating to the OIG's continuing investigation into Movant's participation in the USDA's Rural Rental Housing Program ("RRH"). The RRH is administered by the Farmers Home Administration ("FmHA"), which is a USDA agency. Through the RRH program financial assistance is provided to individuals and entities in order to promote agricultural and rural development. The program is designed to encourage construction of lower income housing for elderly persons. See Government's Response, Decl. Wendy Milano (criminal investigator for the OIG), ¶ 7. The OIG alleges that in the early eighties the FmHA began extending RRH loans to the Movant and a Mr. Fowler for development and operation of federally subsidized apartment projects in Michigan. To date, the loans provided to Movant amount to over $34 million for all of the housing projects. The OIG has previously investigated Movant. In 1988, Movant was convicted of a felony for activities arising out of his participation in the RRH program. The instant investigation (as alleged by the OIG) is due to its belief that Movant has again violated FmHA regulations and "related statutes" by "... unlawfully converting RRH project accounts." See Government's Response 4. The stated purpose proffered by the government in support of the investigation (and thus in support of its argument for enforcement of the subpoena under the Act) is as follows:

---

1. Actually Movant is the owner and president of Management Development Resource, Inc. ("MRD"), which manages and operates these Rural Rental Housing projects. See Government's Response, Decl. of Wendy Milano ¶ 12.

2. 12 U.S.C. § 3405 requires that the government provide the customer with certain forms which facilitate a challenge to the subpoena. In addi-

tion, that section requires, *inter alia*, that the notice state with "reasonable specificity" the nature of the law enforcement inquiry.

3. Movant relies on 12 U.S.C. § 3402, which requires that the records sought be "reasonably descried."

Evidence to date reveals ... that Movant and MRD collected an unauthorized processing fee from apartment residents. Decl. para. 18. The subpoenaed bank records are required to determine whether these monies have been deposited into the RRH project accounts as required by FmHA regulations or whether they were deposited directly to MRD operating accounts. Deposit of such funds into MRD operating accounts is prohibited by FmHA regulations

See Government's Response 4. The government alleges that review of the subpoenaed records is required to allow it to determine whether Movant defrauded it though his participation in the RRH program. The government further alleges that the issued subpoena is in full compliance with both the Right to Financial Privacy Act and this Court's findings in *Office of Inspector General v. Great Lakes Bancorp*, 825 F.Supp. 790 (E.D.Mich.1993). The sole issue before this Court is whether the Government has complied with the requirements of the Right to Financial Privacy Act such that it is entitled to enforcement of the subpoena.

## III. STANDARD OF REVIEW

Although the government cites a plethora of cases (some dealing with the Act and some not) in its pleadings regarding what standard this Court should apply, the requirements set forth within the Act itself are straightforward. The two salient sections of the Act are 12 U.S.C. § 3405 (Requirements for administrative subpoena and summons) and 12 U.S.C. § 3410 (Section dealing with customer challenges).

Section 3405 states in pertinent part that:

.        .        .        .        .

(2) a copy of the subpoena ... shall state *with reasonable specificity* the nature of the law enforcement inquiry

*Id.* (emphasis added).

Section 3410 provides in pertinent part that:

If the court finds that the applicant is not the customer to whom the financial records sought by the Government authority pertain, or that *there is a demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry,* it shall deny the motion [by the customer to quash the application], and, in the case of an administrative summons or court order other than a search warrant, order such process enforced. If the court finds that the applicant is the customer to whom the records sought by the Government authority pertain, and that there is not a demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry, or that there has not been substantial compliance with the provisions of this title, it shall order the process quashed or shall enjoin the Government authority's formal written request

*Id.* (emphasis added). The ultimate burden of showing that the records sought are relevant to a legitimate law enforcement inquiry is on the government. *Hunt v. United States Sec. & Exchange Commission*, 520 F.Supp. 580, 603 (N.D.Tex.1981) (citation omitted). However, the initial burden of production is on the movant to offer proof of facts which show that the documents requested have no connection with the subject matter of the investigation, that he has not committed any offense related to the investigation, or that he is the subject of harassment by the requests. See *Hancock v. Marshall*, 86 F.R.D. 209, 211 (D.D.C.1980).

## IV. DISCUSSION

### A. RELEVANCY TO A LEGITIMATE LAW ENFORCEMENT INQUIRY

Movant initially challenges the legitimacy of the law enforcement inquiry. At oral argument this Court held that—based on a review of the evidence presented to the Court at that time—the government had failed to demonstrate that the records sought are relevant to a legitimate law enforcement inquiry.[4]

---

4. For purposes of facilitating a comprehensive understanding of this case the Court will review

the rationale for this prior ruling.

The government's stated purpose in obtaining the bank records was to determine whether monies collected from unauthorized processing fees from apartment residences were "deposited into the RRH project accounts as required by FmHA regulations or whether they were deposited directly [in]to MRD operating accounts." Government's Response 4. It is not difficult to see how the information sought (i.e. records regarding financial account records of eleven MRD projects) is "relevant" to the above-stated inquiry. The accounts could reveal, for example, monies wrongfully collected from residents and deposited into MRD accounts on various occasions. Thus the Court held that such information is "relevant" to the government's inquiry.

Furthermore, it is easy to understand why the OIG, who is required to "... conduct, supervise, and coordinate ..." audits and investigations relating to programs and operations of the Department of Agriculture (5 U.S.C. app. 3, § 4(a)(1)), would be interested in ascertaining such information. At the time of oral argument, however, it was difficult to comprehend how, *under these circumstances*, that the investigation could be deemed "legitimate." This is because it has always been admitted by MRD (as well as by Movant) that the processing fees in question were (as the government suspected) deposited directly into the MRD operating accounts. See Movant's Response to Government's Motion, Ex. A, Aff. Kenneth Fowler ¶ 6. Nevertheless, the government steadfastly maintained that, despite this fact, its inquiry was indeed "legitimate" under the Act because it satisfied the Supreme Court's "official curiosity" test. In support of this argument the government relied on *U.S. v. Morton Salt*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950). However, *Morton Salt*—which predates the Right to Financial Privacy Act by nearly three decades—is inapposite to the instant case. In *Morton Salt* the Supreme Court was discussing the ability of a *Corporation* (as opposed to an *individual*) to establish standing under the Fourth Amendment to contest a search. *Id.* at 652, 70 S.Ct. at 368–69. The Court held that, even if the government's request for information was caused by nothing more than "official curiosi-

ty," it would nevertheless be proper because law enforcement agencies have a legitimate right to satisfy themselves that *corporate* behavior is consistent with the law. *Id.* at 652, 70 S.Ct. at 368–69. In the instant case, however, the Movant is an *individual*. Moreover, the Fourth Amendment is not relevant to this Court's inquiry under the Act. As the government is fully aware, the Right to Financial Privacy Act was, in large part, passed in response to the decision in *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), where the Supreme Court held that bank customers have no reasonable expectation of privacy, under the Fourth Amendment, in bank records of their accounts. *See Young v. U.S. Dept. of Justice*, 882 F.2d 633, 636 (2nd Cir.1989) (citation omitted).

As stated, the standard mandated by the Act when dealing with customer challenges to a subpoena is that there be a "... demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry." 12 U.S.C. § 3410(c). If applied by this Court, the "official curiosity" standard proposed by the government would have the effect of overruling, *sub silentio*, § 3410(c) of the Act. As the facts of the instant case demonstrate, it is easy to conceive of instances where the government has not shown that the records sought are relevant to a legitimate law enforcement inquiry, as is required under § 3410(c) of the Act. In contrast, it would be difficult—if not impossible—to conceive of an illustration where the government's request for information would not satisfy the "official curiosity" standard. Indeed, the government's request for *any* records via a subpoena (irrespective of whether such records are relevant to a legitimate law enforcement inquiry) would, by definition, satisfy the "official curiosity" standard. Adoption of such a relaxed standard by this Court would be tantamount to abrogating § 3410(c) of the Act. This Court cannot countenance such a result and therefore rejects, in favor of the express language within the Act, the government's position that "[e]ven if the request for information is caused by nothing more than official curiosi-

ty, the agency has a legitimate right [under the Right to Financial Privacy Act] to satisfy itself that the investigated behavior is consistent with the law and public interest." Government's Response 7–8 (fn. omitted). Because the lone query representing the government's stated purpose of its investigation had been admitted to by Movant, the government had not met its burden of showing that its investigation was "legitimate" under 12 U.S.C. § 3410(c).

■ After the Court's holding was issued, the government maintained that it could indeed proffer information sufficient to satisfy § 3410(c) of the Act. In accordance with § 3410(b) the government requested that it be allowed to file a supplemental response which could be reviewed by the Court *in camera*. An Order granting this request was thereafter entered pursuant to 12 U.S.C. § 3410(b). The OIG filed such a supplemental response on October 25, 1993.[5]

As stated, the factual inquiry demanded focuses upon two simple ideas: the "legitimacy" of "the law enforcement inquiry" and the "relevance" of the "records sought. . . ." See § 3410(c). The Court has reviewed, *in camera*, the supplemental response filed by the OIG and, consistent with the inherent limitations of *in camera* judicial review of ongoing executive branch investigative matters, the Court has ordered the supplemental response placed under seal. Of course, the Court will not delineate, even in broad terms, the contents of the supplemental response. The Court holds simply that the government has satisfied its burden of showing that there is a demonstrable reason to believe that the law enforcement inquiry is legitimate and that the sought-after records are relevant. 12 U.S.C. § 3410(c).

**B. CUSTOMER NOTICE PROVISIONS OF THE ACT**

■ As stated in his challenge to the subpoena, the Movant also alleges that the customer notice fails to state with "reasonable specificity" the nature of the law enforcement inquiry and that the customer notice fails to "reasonably describe" the records requested. See Challenge 2. Movant's arguments are without merit. Section 3405 of the Act states in pertinent part that:

.    .    .    .    .

(2) a copy of the subpoena . . . shall state *with reasonable specificity* the nature of the law enforcement inquiry

*Id* (emphasis added). Furthermore, the financial records must be "reasonably described." See 12 U.S.C. § 3402(1). The Court may quash the subpoena only if the government has not "substantially complied" with the provisions of the Act. § 3410(c). The subpoena and customer notice both state that the OIG is conducting an investigation into Movant's participation in the FmHA's RRH program. See Government's Response Atts. 1–2. Moreover, the pleadings filed with this Court in *Great Lakes Bancorp, supra,* as well as the pleadings filed in the instant case, provide Movant sufficient specificity as to the government's law enforcement inquiry. See *Rodriguez v. Federal Savings and Loan Insurance Corp.,* 712 F.Supp. 159, 162, (N.D.Ca.1989) (even if customer notice is deficient, information in government's response to challenge states nature of inquiry with sufficient specificity).

Furthermore, Movant's contention that the notice does not "reasonably describe" the records requested, but instead makes a "blanket request," is without merit. The Court finds that the OIG's request *does* rea-

---

**5.** The Court pauses to observe that the government's response to this customer challenge does not appear to have well served any government interest in conducting this investigation with dispatch. No reason is apparent for counsel to have waited until oral argument to request *in camera* review. Indeed the Act expressly permits the government to seek such review in its written response to the customer challenge and provides that such review shall be allowed if the government states ". . . *in its response[,]* the reasons which make in camera review appropriate." 12

U.S.C. § 3410(b). Had this been the government's position from the first response, the Court would have been saved a great deal of work and the government (as well as the customer) would have saved the time and cost of a hearing. Instead, the attorney representing the government flew to Bay City, Michigan, from Washington, D.C. at the taxpayer's expense only to agree to such review in the course of a ten minute in-court discussion. Needless to say, the Court is not favorably impressed with the initial approach taken by the government in this matter.

sonably describe the records requested. See Government's Response Att. 3, p. 5 (breaking down the specific records which are sought). More importantly, Movant does not dispute—in its Response to the government's Brief—the OIG's contention that it has provided a reasonable description. For these reasons, the technical objections to the notice requirements are without merit.

### C. HARASSMENT

Lastly, Movant states that the subpoena is designed merely for purposes of "harassment." Movant provides no facts to support this argument in its challenge. Moreover, Movant's Response to the Government's Brief does not contest the cases or facts cited by it. Because the Movant has not articulated facts to support this objection, the Court deems it to be without merit.

### V. CONCLUSION

For the reasons stated above, the customer challenge to the administrative subpoena is hereby DENIED.

IT IS SO ORDERED.