**Major Sherry McDONOUGH, USAF, Plaintiff,**

v.

**Dr. Sheila WIDNALL, Secretary of the Air Force, ex officio, General Joseph Ashy, USAF, Commander, Air Force Space Command, ex officio; Lieutenant General Caruana, USAF, Vice Commander, Air Force Space Commander, ex officio; Major General William Jones, USAF, Commander, 14th Air Force, ex officio; Lieutenant Colonel Mary Boone, USAF, Staff Judge Advocate, Peterson Air Force Base [AFB], Colorado, ex officio; Major James T. Flanary, USAF, Circuit Trial Counsel, Randolph AFB, Texas, ex officio; Captain Denise Hilton, Chief of Claims and detailed Assistant Trial Counsel, Peterson AFB, Colorado, ex officio; Captain Michelle Place, in personam; Special Agent Yvette Morales, in personam; Special Agent Marcus Braer, in personam; The Department of the Air Force; Robert Brown, Assistant United**

States Attorney, ex officio; Department of Justice; Dreyfus Family of Funds; The Shareholder Services Group; Bank of America Trust and Savings Association; Ent Federal Credit Union; and Crestar Bank, Defendants.

Civ. A. No. 95–B–357.

United States District Court,
D. Colorado.

May 10, 1995.

Richard F. Currey, Samelson, Dodge & Currey, P.C., Colorado Springs, CO, Alison Ruttenberg, Lakewood, CO, for plaintiff.

Linda Surbaugh, Asst. U.S. Atty., Denver, CO, Arthur R. Goldberg, John Schumann, U.S. Dept. of Justice, Civ. Div., Washington,

DC, Major Jo Ann Stringfield, Air Force Civ. Litigation, Special Litigation Branch, AFL-SA/JACL, Rosslyn, VA, Stephen L. Roth, Asst. U.S. Atty., Salt Lake City, UT, for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Plaintiff, Major Sherry McDonough, U.S.A.F. (McDonough) moves pursuant to Fed.R.Civ.P. 65 for a preliminary injunction enjoining the Air Force defendants "from using in any judicial or administrative action against [Major McDonough], any bank records obtained by grand jury subpoena, any similar bank records obtained thereafter by trial counsel subpoenas issued on October 13, and 14, 1994, the Article 32 report containing grand jury material, the pretrial advice, and any other reports, memoranda, or other documents which rely in any way or were prepared from any of the bank records." (Plaintiff's Brief in Support of Motion for Preliminary Injunction p. 1–2). Jurisdiction is proper under 12 U.S.C. § 3416. Hearings on the motion were held on March 16 and May 10, 1995. For the reasons set out below, I will deny the motion for preliminary injunction but without prejudice.

## FINDINGS OF FACT

Major McDonough is an active duty member of the United States Air Force stationed at Peterson Air Force Base in Colorado Springs, Colorado. In August, 1993 the United States Air Force Office of Special Investigations (AFOSI) initiated an investigation of McDonough based on allegations of forgery and larceny made by McDonough's stepdaughter, Janet S. McDonough. According to Janet McDonough, Major McDonough forged checks totalling $60,000 against a municipal bond fund account owned jointly by the stepdaughter and her father, the late Eugene McDonough.

AFOSI Special Agent Yvette Morales (Morales) testified during the hearing that in February, 1994 she consulted with Special Agent Marcus Braer (Braer) about how to get the bank records she sought. Defendant Braer told her to ask Assistant United States Attorney (AUSA) Gregory Graf (Graf) to get the records through grand jury subpoenas. Morales called Graf but he did not return her call. Braer then told Morales to try AUSA Robert Brown (Brown). Braer admitted on cross-examination that he told Morales to contact Graf and Brown to obtain grand jury subpoenas for bank records to be used in court-martial proceedings. Braer also testified that he was familiar with Fed.R.Crim.P. 6(e) long before the McDonough investigation and he suspected that information obtained through the grand jury process could not be used in the court-martial.

Acting on Braer's suggestions, Morales talked to defendant AUSA Brown in February, 1994. Brown opened a case file which was then assigned to AUSA Paula Ray (Ray). During a telephone call on March 1, 1994, Morales informed Ray that although the McDonough investigation was not a federal case, Morales wanted the grand jury information to use in a court-martial against McDonough. *See* Def.Exh. 33. When Ray expressed concern about this procedure, Agent Braer got on the phone and told Ray that Brown and Graf "do it (use grand jury subpoenas to obtain financial information) all the time." Braer also said he thought grand jury process would be faster than the administrative route. Ray told Braer this was an improper use of the grand jury process and declined the case for filing because there was no federal crime involved. On March 18, 1994, Ray mailed Morales a letter informing her of the impropriety of using grand jury subpoenas to obtain information for use in a court-martial. (Def.Exh. 34). Ray then closed the case file. The misaddressed letter was never received by Morales.

Undaunted, Morales and Braer again contacted AUSA Brown in May, 1994 seeking McDonough's financial information through grand jury process. This effort bore fruit for the AFOSI when financial documents were produced pursuant to grand jury subpoenas issued and served on Ent Federal Credit Union (Def.Exh. 16), Crestar Bank (Def.Exh. 17), and Bank of America (Def.Exh. 22).

The records returned in response to these grand jury subpoenas were presented to the

grand jury which did not return an indictment against McDonough. However, the financial records produced in response to the grand jury subpoenas were delivered to AFOSI personnel. The AFOSI distributed McDonough's financial information obtained by the grand jury subpoenas to, *inter alia*, McDonough's superior officers and the Air Force promotion board. However, the Air Force failed to sign and return to the United States Attorney's office a Fed.R.Crim.P. 6(e) disclosure form. Neither did the United States Attorney's office obtain permission of the grand jury supervising judge to disclose the subpoenaed information.

On August 3, 1994, the Air Force convened an Article 32 proceeding, *see* 10 U.S.C. § 832, (similar to a civilian grand jury or preliminary hearing proceeding). There, the grand jury financial records were considered by the military investigating officer in determining that there was sufficient evidence to bring general court-martial charges against McDonough.

In an attempt to avoid obvious problems posed by the use of the grand jury subpoenas, on October 13 and 14, 1994, Air Force prosecutors issued "trial counsel subpoenas." *See* 10 U.S.C. § 846. These subpoenas, issued in the name of the "President of the United States," sought and obtained bank records not only from the three financial institutions that had produced bank records in response to grand jury subpoenas, but also under the October 13, 1994 trial counsel subpoena, records from a fourth financial institution, Dreyfus Family of Funds. (Gov't Exh. 17–23). Also on October 14, the Air Force prosecutors delivered a memorandum to McDonough providing her with copies of the trial counsel subpoenas they had issued to Ent, Crestar, and Bank of America. The memorandum to McDonough purported to give her notice, pursuant to the Right to Financial Privacy Act (RFPA or Act), 12 U.S.C. § 3405, of the procedures by which she could seek to block disclosure of the financial records sought by the Air Force. (Def.Exh. 19). The Air Force did not give notice to McDonough of its October 13th trial counsel subpoena issued to the Dreyfus Family Fund. (Def.Exh. 23).

In December, 1993, McDonough's commanders recommended a six month delay of her promotion to lieutenant colonel. (Joint Stipulation 24). Based in substantial part on information gathered by the grand jury, in September, 1994, her superiors recommended that her name be removed from the promotion list. (Def.Exh. 9). On December 30, 1994, the commander of the Air Force Space Command recommended that the Secretary of the Air Force remove McDonough from the promotion list. (Def.Exh. 13).

Facing imminent court-martial, McDonough filed a motion for a temporary restraining order (TRO) which I granted *ex parte*, in part because of similar pending allegations that in the recent past the AFOSI failed to follow the procedures outlined in the Right to Financial Privacy Act (RFPA), 12 U.S.C. § 3401 *et seq. See Pohanic v. Department of the Air Force*, 94–B–1705, and *Anderson v. Widnall*, 94–B–2847. The TRO was extended by consent of the parties until March 16, 1995 when a hearing was held on the request for preliminary injunction. At the close of the hearing, I extended the TRO pending this decision.

In response to the temporary restraining order and before the preliminary injunction hearing, the Air Force defendants agreed that "the government will not attempt to offer any of the grand jury subpoenaed documents during McDonough's court-martial." (Air Force Def.Response Brief p. 1). Also, the Air Force defendants stated that "McDonough's promotion removal action is being returned from the Air Force military personnel center to the initiating commander for amendment to delete all information in the file that was obtained consequent to grand jury subpoenas." *Id.* In addition, "the Air Force has agreed to prepare a message for dissemination to OSI agents worldwide reminding them of proper procedures under the RFPA." *Id.* at p. 7 fn. 2. Testimony indicates that the admonitory message has been disseminated and received.

McDonough filed in the military court a motion to suppress evidence and dismiss the charges pending before the court-martial. (Air Force Defs.' Exh. 24). On Friday, May 5, 1995, those charges were dismissed, unilat-

erally, without prejudice. McDonough also filed this action in federal district court claiming that defendants violated Fed. R.Crim.P. 6(e) and the Right to Financial Privacy Act in obtaining and disseminating McDonough's financial records.

## CONCLUSIONS OF LAW

### A. Jurisdiction

**Constitutional Mootness**

■ The Air Force defendants have just filed two declarations which they contend render moot McDonough's request for injunctive relief. McDonough moves to strike these declarations. Separate hearing was held on this question on May 10, 1995. I conclude the injunctive issue is not constitutionally moot under the totality of circumstances here. Rather, this injunctive proceeding presents a live case or controversy under Article III of the United States Constitution.

In the first declaration, Colonel Jack H. Morgan, staff judge advocate of the Air Force Space Command, states the steps the Air Force will take to give McDonough "all of the relief she has sought with respect to the court-martial." (Morgan Declaration). Likewise, Colonel Phillip A. Meek, staff judge advocate of the North American Aerospace Defense Command, specifies in his declaration the action the Air Force will take to give McDonough "all of the relief she has sought with respect to her promotion removal action." (Meek Declaration). Fairly read, these declarations purport to commit the Air Force defendants to a future course of action in McDonough's case commensurate with the relief she seeks here.

■ The "voluntary cessation of allegedly illegal conduct does not deprive the [court] of power to hear and determine the case, i.e., does not make the case moot." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953); *Committee for First Amendment v. Campbell*, 962 F.2d 1517, 1524 (10th Cir.1992). If a party could so avoid the power of the court, he "would be free to return to his old ways." *W.T. Grant*, 345 U.S. at 632, 73 S.Ct. at 897.

When defendants are shown to have "settled into a continuing practice ... courts will not assume that it has been abandoned without clear proof. It is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when ... there is probability of resumption." *United States v. Oregon State Medical Soc.*, 343 U.S. 326, 333, 72 S.Ct. 690, 695–96, 96 L.Ed. 978 (1952) (citations omitted).

■ Nevertheless, the case may be moot if it can be demonstrated "there is no reasonable expectation that the wrong will be repeated." *W.T. Grant Co.*, 345 U.S. at 633, 73 S.Ct. at 897 citing *United States v. Aluminum Co. of America*, 148 F.2d 416, 448 (C.C.A.2 1945); *Campbell*, 962 F.2d at 1524. This discretionary decision is based on the totality of circumstances presented to the district court. *W.T. Grant Co.*, 345 U.S. at 633, 73 S.Ct. at 897–98. Factors to be considered in determining whether such reasonable expectation exists include:

1. genuineness, good faith or permanence of the expressed intent to comply;

2. effectiveness of the discontinuance;

3. in some cases, the character of the past violations.

*Id.*

The declarations filed in this case do not contain any direct admission by the Air Force defendants that they violated the RFPA or the grand jury rules. Nor do the Air Force defendants offer assurance, absent their admonitory message, that they will no longer circumvent the RFPA. For the most part, the declarations express mere promises of future actions rather than "overt and visible" actions which have reversed the effects of the RFPA violations. *See Oregon State Medical Soc.*, 343 U.S. at 334, 72 S.Ct. at 696 (policy discontinued in 1941 does not warrant injunction in 1949). However, as represented in the declaration, the pending court-martial charges have been dismissed without prejudice.

The evidence in this case reflects a past pattern and practice by the Air Force defendants of deliberate and flagrant violation of the RFPA as well as grand jury secrecy

rules. As stated by Special Agent Braer, at least in the recent past, they used the grand jury process "all the time" to obtain financial information. The effectiveness of the Air Force defendants' abatement efforts is open to question.

Based on all the circumstances in this case I cannot conclude that the Air Force defendants have met their heavy burden of showing that there is "no reasonable expectation that the wrong will be repeated." *W.T. Grant Co.*, 345 U.S. at 633, 73 S.Ct. at 897 citing *United States v. Aluminum Co. of America*, 148 F.2d at 448; *Campbell*, 962 F.2d. at 1524. McDonough has, however shown a cognizable danger of recurrent violation. *Id.* Accordingly, McDonough's request for injunctive relief is not constitutionally moot.

**Military Justice**

■ This civil action alleges violations of the RFPA by Air Force personnel during the investigation and prosecution of a general court-martial against Major McDonough, an Air Force officer. I am mindful that this case raises sensitive questions concerning the proper relationship between the military justice system established by Congress and the powers and responsibilities of Article III courts. *Schlesinger v. Councilman*, 420 U.S. 738, 740, 95 S.Ct. 1300, 1304, 43 L.Ed.2d 591 (1975). Normally, the "general equitable balance" weighs "against intervention, by injunction or otherwise, in pending court-martial proceedings." *Id.* at 740, 95 S.Ct. at 1304. This tilt against intervention is in keeping with the premise that "military law ... is a jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment." *Burns v. Wilson*, 346 U.S. 137, 140, 73 S.Ct. 1045, 1047, 97 L.Ed. 1508 (1953). Also, Congress has not "conferred on any Article III court jurisdiction directly to review court-martial determinations." *Schlesinger*, 420 U.S. at 746, 95 S.Ct. at 1307. The general rule is that "the acts of a court-martial, within the scope of its jurisdiction and duty, cannot be controlled or reviewed in the civil courts, by writ of prohibition or otherwise." *Schlesinger*, 420 U.S. at 746, 95 S.Ct. at 1307 *quoting Smith v. Whitney*, 116 U.S. 167, 177, 6 S.Ct.

570, 575, 29 L.Ed. 601 (1886). The military is "a specialized society separate from civilian society" with "laws and traditions of its own [developed] during its long history." *Parker v. Levy*, 417 U.S. 733, 743, 94 S.Ct. 2547, 2554, 41 L.Ed.2d 439 (1974).

■ Here, plaintiff seeks, *inter alia*, injunctive relief for alleged violations of the RFPA by Air Force personnel. Rather than reviewing the actions of the military court, plaintiff seeks review and relief for actions of military personnel. This distinction is important because I have no authority to enjoin the court-martial proceedings against McDonough. *Schlesinger, supra; McLucas v. DeChamplain*, 421 U.S. 21, 95 S.Ct. 1365, 43 L.Ed.2d 699 (1975). Rather, my authority stems from the exclusive jurisdiction of the federal district courts to enforce the RFPA. 12 U.S.C. § 3416.

■ Likewise, federal courts tread lightly in military promotion actions. The President of the United States commissions all military officers. 10 U.S.C. § 531(a). The President alone is authorized to appoint officers in grades up to and including that of colonel. *Id.* It is "a matter of discretion within the province of the President as Commander in Chief" to grant commissions to military officers. *Orloff v. Willoughby*, 345 U.S. 83, 90, 73 S.Ct. 534, 538–39, 97 L.Ed. 842 (1953). Indeed, courts "have never assumed by any process to control the appointing power either in civilian or military positions." *Id.*

■ Whether McDonough deserves appointment to the rank of lieutenant colonel is not for me to say for, with good reason, judges are not given the task of running the military. *Id.* at 93, 73 S.Ct. at 539–40. The "judiciary [must] be scrupulous not to intervene with legitimate [military] matters as the [military] must be scrupulous not to intervene in judicial matters." *Id.* Improper exercise of this court's jurisdiction would be a "disruptive force as to affairs peculiarly within the jurisdiction of the military authorities." *Id.* at 94–95, 73 S.Ct. at 540. However, alleged violations of the RFPA are "peculiarly" within the jurisdiction of Article III courts and not the military justice system.

*See United States v. Wooten,* 34 M.J. 141 (CMA 1992); 12 U.S.C. § 3416. Accordingly, it is exclusively the province of Article III courts to grant relief for violations of the RFPA.

The distinction between directly enjoining the court-martial and enjoining the use of information obtained in violation of the RFPA is a fine one. I recognize that the effect of injunctive relief under the RFPA in this case could have collateral consequences upon the court-martial and administrative actions against McDonough. The potential for such collateral consequences, however, does not diminish my clear equitable jurisdiction to grant relief in this case. Indeed, that jurisdiction rests exclusively with Article III courts beginning, in the first instance, with "any appropriate United States district court." § 3416. *See also* § 3418.

**B. Preliminary Injunction**

 The purpose of a preliminary injunction under Fed.R.Civ.P. 65 is to preserve the status quo between the parties pending a final determination on the merits. *University of Texas v. Camenisch,* 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). A preliminary injunction is an equitable remedy that invokes the sound discretion of the district court. *Lundgrin v. Claytor,* 619 F.2d 61, 63 (10th Cir.1980). The burden is on the movant to make a *prima facie* showing of a probable right to the ultimate relief and a probable danger of injury if the motion is denied. *Id.* A preliminary injunction may issue if the movant clearly shows: (1) irreparable injury if the injunction is not granted; (2) the threatened injury outweighs any harm the preliminary injunction will cause the opposing party; (3) the preliminary injunction is not adverse to the public interest; and (4) a substantial likelihood of success on the merits. *SCFC ILC, Inc. v. Visa USA, Inc.,* 936 F.2d 1096, 1098 (10th Cir.1991); *Lundgrin v. Claytor,* 619 F.2d 61, 63 (10th Cir.1980).

 The 10th circuit has adopted a modified "likelihood of success" requirement. If the movant has satisfied the first three preliminary injunction requirements, the movant may establish likelihood of success by

showing questions "so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation." *Walmer v. United States Dept. of Defense and Dept. of Army,* 52 F.3d 851, 854 (10th Cir.1995); *City of Chanute v. Kansas Gas and Elec. Co.,* 754 F.2d 310, 314 (10th Cir.1985). Preliminary injunction is an extraordinary remedy. *GTE Corp. v. Williams,* 731 F.2d 676, 678 (10th Cir.1984). Thus, the right to relief must be clear and unequivocal. *See Penn v. San Juan Hosp.,* 528 F.2d 1181, 1185 (10th Cir. 1975). *See generally* 11 C. Wright & A, Miller, *Federal Practice and Procedure* § 2948m at 428–29 nn. 19–21 (1973 & 1991 Supp.).

**C. Right to Financial Privacy Act, 12 U.S.C. § 3401 et seq.**

 Congress passed the RFPA in response to the Supreme Court's holding that a bank customer has no constitutionally protected privacy interest in bank records. *United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976). *See* H.R.Rep. No. 1383, 95th Cong., 2d Sess. 34 (1978). The Act provides statutory protection against unrestricted access to financial records to "fill the void in ... Federal law [left by *Miller*]." Hearings on S. 2096, S. 2293, and S. 1460 Before the Subcomm. on Financial Institutions of the Senate Comm. on Banking, Housing, and Urban Affairs, 95th Cong., 2d Sess. 154 (1978) (statement of Senator Mathias). Congress and the executive regard the Act as a compromise between a "bank customer's right of financial privacy and the need of law enforcement agencies to obtain financial records pursuant to legitimate investigations." *United States v. Frazin,* 780 F.2d 1461, 1465 (9th Cir.1986); *See* H.R.Rep. No. 1383 at 34 reprinted in 1978 U.S.Code Cong.Ad.News 9273, 9306.

The purpose of the Right to Financial Privacy Act (RFPA) is:

to protect the customers of financial institutions from unwarranted intrusion into their records while at the same time permitting legitimate law enforcement activity. Therefore, the title seeks to strike a balance between customers' right of priva-

cy and the need of law enforcement agencies to obtain financial records pursuant to legitimate investigations.

H.R.Rep. No. 1383, 95th Cong., 2d Sess. 33, *reprinted* in 1978 *U.S.Code Cong. & Admin.News* 9305.

"The most salient feature of the [RFPA] is the narrow scope of the entitlements it creates." *SEC v. Jerry T. O'Brien, Inc.,* 467 U.S. 735, 745, 104 S.Ct. 2720, 2727, 81 L.Ed.2d 615 (1984). Indeed, the Act carefully limits the types of customers to whom it applies and limits the types of records it protects. 12 U.S.C. § 3401(2), (4), and (5). However, the Act contains strict procedural requirements for alternative methods to obtain financial records, *see e.g.* § 3404 (customer authorization); § 3405 (administrative subpoenas); § 3407 (judicial subpoenas). For purposes of the Act, Congress defines "Government authority" to mean "any agency or department of the United States, or any officer, employee, or agent, thereof." 12 U.S.C. § 3401(3).

■ The RFPA "provid[es] that the government cannot gain access to a bank customer's financial records or other information without first complying with the notice and procedure requirements of the RFPA." *Adams v. Board of Governors of the Federal Reserve Bd.,* 659 F.Supp. 948, 954 (D.Minn. 1987). *See also Donovan v. National Bank of Alaska,* 696 F.2d 678, 683 (9th Cir.1983). The RFPA requires federal agencies "to follow the procedures established by this title when they seek an individual's records." H.R.Rep. No. 1383, 95th Cong., 2d Sess. 33 (1978), U.S.Code Cong. & Admin.News 1978, pp. 9273, 9305.

While the grand jury subpoenas are clearly judicial, the trial counsel subpoenas were issued in the name of the President of the United States. (Def.Exh. 19). Thus, these subpoenas are administrative subpoenas, not judicial subpoenas.

A government authority may obtain financial records pursuant to an administrative subpoena only if:

(1) there is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry;

(2) a copy of the subpoena ... has been served upon the customer ... together with the following notice which *shall* state with reasonable specificity the nature of the law enforcement inquiry:

> "Records or information concerning your transactions held by the financial institution named in the attached subpoena ... are being sought by this (agency or department) in accordance with the Right to Financial Privacy Act of 1978 [12 U.S.C.A. § 3401 et seq.] for the following purpose: If you desire that such records or information not be made available, you must:
>
> 1. Fill out the accompanying motion paper and sworn statement or write one of your own, stating that ...
>
> 2. File the motion and statement by mailing or delivering them to the clerk of any one of the following *United States district courts:*
>
> 3. Serve the Government authority requesting...."

12 U.S.C. § 3405 (emphasis added).

Bank customers may challenge an administrative subpoena by filing a formal written request "in the appropriate United States district court." 12 U.S.C. § 3410(a). Jurisdiction over RFPA matters is vested exclusively in Article III courts. 12 U.S.C. § 3416. The RFPA provides the "sole judicial remedy available to a customer to oppose disclosure of financial records pursuant to [the Act]." 12 U.S.C. § 3410(e).

In addition to providing exclusive jurisdiction and remedy to oppose disclosure in the federal district courts, Congress also defines the exclusive judicial remedies for violations of the RFPA: "The remedies and sanctions described in this chapter shall be the only authorized judicial remedies and sanctions for violations of this chapter." 12 U.S.C. § 3417(d); *Sandsend Financial Consultants, Ltd. v. Federal Home Loan Bank Bd.,* 878 F.2d 875 (5th Cir.1989). The customer may recover:

1. $100 without regard to the volume of records involved;

2. any actual damages sustained by the customer as a result of the disclosure;

3. such punitive damages as the court may allow, where the violation is found to have been willful or intentional; and

4. in the case of any successful action to enforce liability under this section, the costs of the action and reasonable attorney fees.

12 U.S.C. § 3417(a).

■■■ The questions whether and what McDonough may recover under the provisions of § 3417(a) remain for another day. The issue here concerns my equitable jurisdiction. That jurisdiction flows from 12 U.S.C. § 3418 which states:

In addition to any other remedy contained in this chapter, injunctive relief shall be available to require that the procedures of this chapter are complied with. In the event of any successful action, costs together with reasonable attorney's fees as determined by the court may be recovered.

In addition to enjoining use of information disclosed pursuant to the grand jury subpoenas, McDonough asks that I enjoin the use of information disclosed pursuant to the four trial counsel subpoenas issued by the Air Force. McDonough contends, *inter alia,* that she was provided defective notice under the Act. I agree.

12 U.S.C. § 3405(2) provides that notice to the customer contain a list of the United States district courts in which the customer could bring suit challenging the disclosure of financial information. In the same vein, the United States Court of Military Review advises that a customer is "entitled to challenge the issuance of ... subpoenas to financial institutions in a United States district court." *United States v. Byard,* 29 M.J. 803, 807 n. 12 (A.C.M.R.1989).

The Air Force provided McDonough with notice of trial counsel subpoenas sent to ENT Federal Credit Union, Crestar Bank, and Bank of America. (Gov't Exh. 19). In the notice, McDonough was advised:

If you desire that such records or information not be made available, you must:

a. ...

b. File the motion and statement by mailing or delivering them to Judge Curtin, HQ AFLSA Judiciary Central Circuit, 2035 1st Drive West, Suite 2, Building 854, Randolph AFB, Texas 78150–4304.

Consequently, the notice gave McDonough incorrect information that she must go to a military judge at Randolph Air Force Base, Texas if she wished to block release of the information sought in the subpoenas. However, jurisdiction under the RFPA is vested solely in the federal district courts. § 3416. Therefore, directing McDonough, the subject of the RFPA subpoenas, to a court which has no jurisdiction to hear her challenge to the subpoenas, rendered notice fatally defective.

I conclude that the October 14, 1994 notice to McDonough is facially inadequate and defective and, thus, in violation of the RFPA. Further, the Air Force failed to provide any notice at all to McDonough of its October 13, 1994 trial counsel subpoena to Dreyfus Family Fund. Moreover, I conclude that there has not been substantial compliance with the provisions of the RFPA. Accordingly, in addition to information obtained through the grand jury subpoenas, use of any and all information obtained as a result of the October 14, 1994 trial counsel subpoenas to Ent Federal Credit Union, Crestar Bank, Bank of America, and Dreyfus Family Fund is subject to injunctive order.

The facts in this case are distinguishable from the cases cited by defendants in which courts have been faced with the sufficiency of notice about the nature of the law enforcement inquiry, *see e.g. Rodriguez v. FSLIC,* 712 F.Supp. 159, 161 (N.D.Cal.1989); *Donovan v. U.A. Local 38 Plumbers and Pipe Trades Pension Fund of San Francisco,* 569 F.Supp. 1488 (N.D.Cal.1983), the description of the records requested, *Breakey v. Inspector General of the U.S. Dept. of Agriculture,* 836 F.Supp. 422, 426–27 (E.D.Mich.1993), or objections to the breadth of the records sought. *Dawar v. HUD,* 820 F.Supp. 545, 547 (D.Kan.1993).

This case is also distinguishable from 10th circuit cases dealing with civilian courts' use of injunctions in cases involving military matters. Unlike the plaintiff in *Clark v. Widnall,* 51 F.3d 917 (10th Cir.1995), McDonough

does not challenge or seek to avoid the authority of the Air Force over her. Rather, she seeks relief under the remedies provisions of the RFPA. The Air Force may not avoid the requirements of the RFPA merely because it is a branch of the military. Further, the harm sought to be avoided in cases such as *Clark v. Widnall and Lundgrin v. Claytor* is the interference of civilian courts in internal military matters. Here, however, the actions of the Air Force defendants are not the actions of the military *qua* military. Rather, these actions implicate directly the RFPA. Accordingly, my authority to enjoin the Air Force defendants stems from the RFPA.

### D. Prudential Mootness

The evidence before me establishes unequivocally that the AFOSI investigators impermissibly circumvented the protections afforded McDonough under the RFPA by use of grand jury subpoenas. Moreover, they violated the grand jury secrecy and disclosure requirements of Fed. R.Crim.P. 6. The Air Force defendants concede, as they must, that they will not use financial information disclosed pursuant to grand jury subpoenas. They have further declared, as they should, that they intend, independent of my jurisdiction to act, to afford McDonough the same relief she seeks here. The Air Force defendants urge me to stay my hand at this time under the doctrine of "remedial" or "prudential mootness."

The doctrine of prudential mootness recognized by the 10th circuit "holds that '[i]n some circumstances, a controversy, not [constitutionally] moot, is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant.'" *Building and Constr. Dept. v. Rockwell Inter. Corp.*, 7 F.3d 1487, 1492 (10th Cir.1993), citing *Chamber of Commerce v. United States Dept. of Energy*, 627 F.2d 289, 291 (D.C.Cir.1980). It is applied in cases involving requests for prospective equitable declaratory or injunctive relief. *Id.* Its most appropriate application is found in cases against the government where it appears the government has already changed or is in the process of changing its policies or where it appears the actions in question are unlikely to be repeated. *Id.*

In the broadest sense, the Air Force defendants appear to have changed and are changing its policies concerning compliance with the RFPA. Indeed, this case seems to have generated widespread awareness of and sensitivity to privacy rights under the RFPA which will be further stimulated by publication of this decision. With specific regard to its actions concerning McDonough, the Air Force defendants have declared intent to provide her with the very relief she seeks here. This intent to return to the *status quo ante* is evidenced by dismissal of the pending court-martial charges, albeit without prejudice.

As I recognize in this opinion, sensitive questions exist regarding the relationship of our civil courts and the military justice and promotional systems. Although my power to grant the relief requested is clear, and although McDonough could be said to have met her four-fold burden for injunctive relief, *Visa*, 936 F.2d at 1098, I conclude I should stay my hand at this time in deference to considerations of comity for a coordinate branch of government.

Accordingly, it is ORDERED that:

1. McDonough's motion for preliminary injunction is DENIED without prejudice;

2. McDonough's motion to strike declarations is DENIED.